James M. WHITE (91–6096/6097), Petitioner–Appellee, Cross–Appellant,

v.

Stephen T. SMITH (91–6095), Respondent–Appellant, Cross–Appellee.

Nos. 91–6095, 91–6096, 91–6097.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1992.

Decided Jan. 19, 1993.

Rehearing and Rehearing En Banc Denied Feb. 24, 1993.

Trisha Zeller James (argued and briefed), James & James, Louisville, KY, for petitioner-appellee cross-appellant.

David A. Sexton, (argued), Pamela J. Murphy, Attys. Gen. (briefed), Chris Gorman, Atty. Gen., Frankfort, KY, for respondent-appellant cross-appellee.

James Michael White, pro se.

Before: KEITH, NELSON, and RYAN; Circuit Judges.

RYAN, Circuit Judge.

The Commonwealth of Kentucky, on behalf of Warden Stephen T. Smith, appeals from the district court's grant of a writ of habeas corpus to James M. White. The district court determined that a Kentucky trial court had denied White his right under the Sixth and Fourteenth Amendments to an impartial jury by allowing the jury to render a verdict after White's mother spoke to jurors in the courtroom before they deliberated. White cross-appeals the district court's modification of its writ and its denial of habeas relief, based on White's other assignments of error.

For the reasons stated herein, we shall reverse the district court's grant of a writ of habeas corpus to White, and affirm the district court's denial of habeas relief in all other respects.

## I.

White argues that his conviction in Christian County, Kentucky, for second-degree robbery and for being a persistent felony offender (PFO) was constitutionally defective. The convictions arose from the robbery of the Delta Market in Christian County.

At trial, the jury convicted White of robbery in the second degree. Subsequently, the PFO charge was submitted to the jury. Before retiring to deliberate on the PFO charge and sentencing, White's mother, who was present as a spectator in the courtroom, said to the jurors, "I will pray for you." The jury retired to the jury room, but soon returned to the courtroom. The foreman of the jury and the court then engaged in the following colloquy:

JUROR: Before we started just a moment ago Mrs. White came up and made a few statements. It made a few of the jurors nervous and they were worried about reprisals or something and they are nervous about this.

THE COURT: What were the statements?

JUROR: She said she would pray for everyone. Nothing bad or anything but she made some of the ladies nervous. It worried them a little bit.

THE COURT: Well, I am sorry that that happened and I will take Maime [sic] White at her word. She is known to this court and a very respected lady and I assume she meant what she said that her prayer was meant for guidance and that she meant no harm whatsoever at all. I am instructing everyone to stay away from the jury and not to communicate with them on any subject at all. There is no need to worry about any form of reprisals. Anyone that attepmpts [sic] to harm or threaten you in any way will be dealt with severely. You may go back with the bailiff.

After the jury returned to the deliberation room, White's lawyer objected, arguing that the jurors should not be allowed to deliberate because of Mrs. White's remark. The court overruled the objection, and the jury eventually returned a verdict of guilty.

Counsel for White waived the opportunity to poll the jurors but did move for a mistrial. The court denied this motion. White was sentenced to a 20–year term of imprisonment for both offenses. He appealed the convictions to the Kentucky Court of Appeals, which affirmed. The Kentucky Supreme Court denied relief.

White then filed a petition for a writ of habeas corpus in federal district court for the Western District of Kentucky. The Commonwealth moved for summary judgment, and the district court referred the matter to a magistrate judge who recommended that summary judgment for the Commonwealth be granted on all claims. When there was no objection to the magistrate judge's recommendation, the district court adopted the recommendation, incorporating it by reference in the court's summary judgment for the Commonwealth. White moved for reconsideration, arguing that he had not been able to lodge objections to the magistrate judge's recommendation because the prison in which he was residing was under "lock down." The district court granted the motion. In its memorandum opinion, the court denied the Commonwealth's motion for summary judgment and again remanded to the magistrate judge. The district court ordered the magistrate judge to "conduct an evidentiary hearing to determine whether Petitioner's 6th Amendment right to an impartial jury was violated."

On remand, the magistrate judge, the petitioner, and the Commonwealth all concluded that "a meaningful evidentiary hearing" was not possible because Kentucky law prohibited an inquiry into the jury's deliberations. The magistrate judge recommended that the district court vacate its order remanding the case for a hearing, consider whether the statement made by White's mother would have had an effect on a "typical juror," and decide whether that effect would render the jury impartial. White filed a timely objection to the magistrate judge's report.

After further proceedings and consideration of the magistrate judge's recommendations, the district court entered its final memorandum opinion. The district court agreed with the magistrate judge's determination that an evidentiary hearing would be impossible. The district court concluded that whenever a jury is exposed to an unauthorized communication, a trial judge must conduct an evidentiary hearing to determine whether the jury was prejudiced. Because it found that the Kentucky trial court had failed to conduct such a hearing, the district court granted White's petition for a writ of habeas corpus based on his tainted jury claim. The court denied the petition on all other grounds. The district court eventually amended its conditional writ to provide that if the Commonwealth elected to retry White, the new jury could address only the PFO charge and the sentencing, not the robbery charge.

## II.

The Commonwealth argues that the district court erred in granting habeas relief to White. The Commonwealth contends that a trial court is not necessarily required to conduct a hearing upon being informed of extraneous contact with the jury by a third party, particularly under the facts of this case.

■ We review a petition for a writ of habeas corpus *de novo*, giving complete deference to evidence-supported state court findings. *Williams v. Withrow*, 944 F.2d 284, 288 (6th Cir.1991), *cert. granted*, ── U.S. ──, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992).

The starting point for discussion of trial court treatment of extraneous contact with a jury is *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). In *Remmer*, an unidentified person spoke to a juror, offering him a bribe if the jury brought "in a verdict favorable to the petitioner." *Id.* at 228, 74 S.Ct. at 450. The juror informed the judge of this communication and the trial judge informed the prosecution, ordered an FBI investigation, but did not inform counsel for the defense. The defendant later argued that this was prejudicial error. The Supreme Court agreed, stating:

In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial....

The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229–30, 74 S.Ct. at 451. The district court placed great reliance on *Remmer*. However, *Remmer* has not been the final word on third-party jury communications.

This court has specifically held that not all communications with jurors warrant a hearing for a determination of potential bias. In *United States v. Walton*, 908 F.2d 1289 (6th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229, *and cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541, *and cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990), we held that communication between a juror and the trial judge did not necessitate a hearing to determine whether jury bias existed. We stated that "[b]ecause of the *extremely limited nature of the contact,* we do not believe that the District Court was required to hold a hearing *on its own motion.*" *Id.* at 1297 (emphasis added).

Thus we are faced with two paradigms. On the one hand, the facts of *Remmer* teach that if the communication to a juror comes from an outsider, suggesting bribery, a hearing must be held. At the same time, *Walton* teaches that if the communication is between a juror and a judge, no evidentiary hearing need be conducted *sua sponte*. In this case, the district court noted *Walton*, but distinguished it simply because the communication there was between a juror and a *judge*. While the district court's emphasis on the office of the communicator is understandable, we disagree that *Remmer* controls. The rule of *Walton* is more appropriately applied to the facts presented by this appeal.

■ Here, a relatively innocuous remark was made by the defendant's mother to a member or members of the jury, when she said "I will pray for you." This communication appears to have been made inside the courtroom, under controlled conditions, while the trial was in progress, and as the jury was retiring to deliberate. The comment, given its primary and generally accepted meaning, is simply not threatening. Even if it had created some doubt in the minds of some jurors, as it may have done, such doubt was allayed by the district court's careful admonition. Indeed, it might even be said that the trial court's glowing comments about Mrs. White's character benefited White, not the Commonwealth.

There is another important point worth noting. At no time during the judge's colloquy with the foreman, admonition to the jury, discussion with counsel, or before or after sentencing, did White request a hearing for the purpose of assessing the impact of Mrs. White's comment on the jurors. Instead, the defense moved twice for a mistrial which was denied. This may well have been a tactical decision by White's counsel. An inquiry into the effect upon the jurors of Mrs. White's statement that she would pray for them, especially after the district court's complimentary comment about Mrs. White, would unlikely have aided the defendant's cause. Defense counsel's failure to request a hearing, and his waiver of the opportunity to poll the jurors, greatly undercuts his argument that Mrs. White's comment should be presumed to have affected the jury's impartiality.

■ Certainly, it is ordinarily advisable for a trial judge to conduct a hearing when there is third-party communication with the jury. We cannot conclude, however, as White would have us, that the Constitution requires a trial court to *sua sponte* conduct a full-blown evidentiary hearing every time a courtroom spectator makes a comment within the jury's hearing. Where the communication is innocuous and initiated by a spectator in the form of an outburst, a hearing is not necessarily required. This is particularly true when, as in this case, the

trial judge follows up with a statement to the jury, allaying any apprehensions.

We conclude that the trial judge's failure to *sua sponte* conduct an evidentiary hearing to assess juror prejudice did not involve an "infraction[ ] that violate[s] 'fundamental fairness....'" *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (citation omitted).

### III.

Finally, White cross-appeals the district court's modification of the writ and the denial of habeas relief based on his other assignments of error. Because we reverse the lower court's issuance of the writ, we need not address the modification. As to White's other arguments, including the Kentucky court's admission of prior guilty pleas, limitation on cross-examination of witness Harold Cooper, and alleged prejudice during voir dire, we have carefully reviewed the record and find that these assignments of error are without merit.

### IV.

Because we find that the district court erred in determining that the Sixth Amendment to the Constitution required that the court, *sua sponte*, conduct an inquiry into the jurors' reaction to the statement made to them by White's mother, we REVERSE the grant of a conditional writ of habeas corpus. As to the district court's denial of habeas relief for White's other assignments of error, we AFFIRM.

KEITH, Circuit Judge, dissenting.

Because the majority opinion is based upon a misguided analysis of *United States v. Walton*, 908 F.2d 1289 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990), I must dissent.

The majority states that, although the *ex-parte* contact in *Walton* was between a juror and a judge, it is not sufficiently distinguishable from the facts of this case. In *Walton*, the juror's only contact with the judge was a conversation in which the juror stated he believed signalling was going on during the testimony of certain wit-

nesses. The conversation took place outside the presence of the other jurors, and the juror informed the judge that he had not relayed his concerns to the other jurors.

In contrast, in this case Mrs. White addressed the entire jury and told them that she would pray for them. Whether this comment was intended to be threatening or not is irrelevant. The important fact is that the foreman indicated that some of the members of the jury were made "nervous" by the comment. It is impossible for any court at this stage to assess the impact this statement had on the jury. Therefore, it is fundamental to a fair trial that trial courts conduct a hearing to determine whether the jury was biased or prejudiced in situations where this type of juror communication takes place. I agree with District Court Judge Edward H. Johnstone's well reasoned remarks:

> While the Supreme Court has recognized that certain *ex parte* comments between a judge and juror may be harmless, *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), this court is unable to conclude that the failure to hold a hearing in this instance was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Moreover, even though an unauthorized communication does not raise a presumption of prejudice and the defendant bears the burden to prove actual bias, the failure to conduct a hearing to allow the defendant the opportunity to prove bias warrants the grant of a writ of habeas corpus. *See generally, United States v. Chiantese*, 582 F.2d 974 (5th Cir.1978) ("in instances where the jury misconduct involves influences from outside sources, the failure of the trial judge to hold a hearing constitutes an abuse of discretion and is therefore reversible error").

A different analysis must apply to a juror's *ex parte* communication with a judge, as opposed to the mother of a defendant's communication with the entire jury. The potential for bias is much greater in the case with contact between a defendant's

relative and the entire jury, than it is between the judge and one juror. The trial court should have conducted a hearing to determine whether this statement was prejudicial to the defendant. However, because the trial court failed to conduct a hearing, any determination of bias or prejudice is pure speculation. Because the hearing was denied, the defendant is entitled to the habeas relief he was granted by the district court. Accordingly, I would therefore affirm the district court's ruling.