**Fred Harry ROGERS, Jr., Petitioner–Appellant,**

v.

**Carol HOWES, Respondent–Appellee.**

No. 01–1367.

United States Court of Appeals, Sixth Circuit.

April 30, 2003.

Before GILMAN and GIBBONS, Circuit Judges; and ECONOMUS, District Judge.*

GIBBONS, Circuit Judge.

Petitioner Fred Harry Rogers Jr. was convicted of first degree murder in Michigan state court. Rogers filed this petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Rogers challenges his conviction on the following grounds: that he was denied his Sixth Amendment

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

right to be present during trial when the trial court allowed the jury to view the scene of the homicide in his absence; that he was deprived of due process by alleged errors in the trial court's jury instruction on first degree murder; that he was deprived of due process by the alleged failure of the trial court to instruct the jury on the elements of attempted robbery; that he was deprived of due process as a result of the trial court's instruction on reasonable doubt; and that he was deprived of due process as a result of the failure of the trial judge to conduct an evidentiary hearing following outbursts made by a spectator outside the courtroom. For the reasons set forth below we affirm the district court's decision to deny petitioner's request to grant habeas corpus relief.

## I.

On June 24, 1965, Rogers was convicted in the Wayne County Circuit Court of first degree murder arising out of an armed robbery of a drugstore. Rogers was sentenced to life in prison without parole. In 1965, Rogers dismissed his appellate counsel and failed to take a timely appeal. After filing two unsuccessful motions for relief from judgment in the trial court, in 1994 Rogers filed this petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

The district court dismissed the petition on the basis of procedural default, but we reversed and remanded. *Rogers v. Howes*, 144 F.3d 990 (6th Cir.1998). On remand, the district court referred Rogers' habeas petition to the magistrate judge for a report and recommendation. On March 7, 2001, the district court adopted the magistrate judge's report and recommendation and denied Rogers' request for a writ of habeas corpus. Rogers then timely filed this appeal.

## II.

A district court's legal decisions in habeas corpus actions are reviewed *de novo*, and its factual findings are normally reviewed for clear error. *See Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir.2000). However, when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial and the district court thus makes "no credibility determination or other apparent finding of fact," the district court's factual findings are reviewed *de novo*. *Id.* (quoting Moore v. Carlton, 74 F.3d 689, 694 (6th Cir.1996)). In reviewing habeas petitions, a state court's factual determinations are afforded a presumption of correctness. 28 U.S.C. § 2254(e)(1) (providing that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct").

Trial court errors in matters of state law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the trial so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). With regard to jury instructions, the burden on the petitioner is particularly heavy. "In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree as to constitute a clear violation of due process. The petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned." *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir.1986); *see also Coe v. Bell*. 161 F.3d 320, 329 (6th Cir.1998).

### A.

During the trial, defense counsel requested that the jury visit the scene of the crime. The trial judge expressed the following concerns about conducting a jury view:

> The Court: I'm a little bit in a quand[a]ry, Mr. Ferris. We were going to go out to the scene tomorrow. I made arrangements for a bus. Counsel have indicated, but not on the record, that they will waive the three defendants going along. I'm not positive they can waive it. I'm not sure, and if they can't I will not go to the scene. So will you, Mr. Groat, and you, Mr. Ferris, give me an answer to that in about ten minutes? There is some late case, I remember reading it. I think it is in Oregon where the defendants have to be with the jury every minute of the time. I'm not absolutely sure and for personal security reasons, if for no other reasons, I'm not going to take the defendants out to the scene. That is, if I think we cannot waive it. Right now, I think we cannot. We are not going out there. We will try to make some drawing or take a photo or do something else. So will you please give me an answer about four o'clock?

Later that same day, the trial judge and petitioner had the following exchange on the record:

> The Court: All right, Mr. Rogers-
>
> Defendant Rogers: Yes, your Honor, I waive.
>
> The Court: I understand the law the way I comprehend it, it is a rather old case I think there is one in 178 Michigan. The attorneys can't very well waive, but you can. If you want to go, you have got a right, but I don't know if I'll go. Do you understand that?
>
> Defendant Rogers: Yes, sir.

> The Court: Do you waive that right?
>
> Defendant Rogers: Yes, your Honor.
>
> The Court: You have talked it over with your counsel, Mr. Khoury? You have talked it over with Mr. Khoury?
>
> Defendant Rogers: Yes, sir. I have.

Although petitioner did not attend the jury view that followed, defense counsel was present. Petitioner now contends that "the confrontation clause of the Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the right to be present during a jury's visit to a crime scene." Petitioner further asserts that "he did not voluntarily waive his right to visit the scene of the alleged crime, and only waived that right after the trial court made it clear that it, along with the jury, would not visit the scene if he exercised his right to go."

■ The Constitution does not guarantee a criminal defendant the absolute right to be present at a jury view. In *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (overruled in part on other grounds), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment was not violated by excluding a defendant from an on-site inspection by a jury where the defendant's attorney was present and participated, along with the prosecutor, in directing the jury's attention to various aspects of the location under inspection by the jury. The Court explained that "the presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* at 107–08, 54 S.Ct. 330. The Court also emphasized that the defendant's presence at a jury view is not among those constitutional rights "conferred so explicitly as to leave no room for an inquiry whether prejudice to a defendant has been wrought through their deni-

al." *Id.* at 116, 54 S.Ct. 330; *cf. United States v. Walls,* 443 F.2d 1220, 1223 (6th Cir.1971) (finding "reversible error for the court to deny appellant *and his attorney* the opportunity to attend the view to insure against the intrusion of prejudicial error" (emphasis added), but basing its decision upon its supervisory authority over the administration of criminal justice in the district courts and not the Constitution).

Here, petitioner has failed to establish prejudice. Petitioner merely asserts that "had he been allowed to accompany the court on its visit to the crime scene, he would have been present to observe any prejudicial influences on the jury" and that "he would have been present to observe differences in the layout of the crime scene from that described by witnesses and the prosecution." Petitioner has not shown the existence of any prejudicial occurrences at the jury view. Moreover, defense counsel was present at the jury view. As the Supreme Court noted in *Snyder,* the presence of defense counsel "supplies an additional assurance that nothing helpful to either side will be overlooked upon the view." 291 U.S. at 113, 54 S.Ct. 330. Excluding petitioner from the jury view thus did not constitute a denial of due process.

### B.

Petitioner claims that he was deprived of due process because the jurors were instructed that a conviction for first degree murder could be based upon a finding of either felony murder or premeditated murder but were not instructed that their verdict must be unanimous as to at least one of these two theories. Petitioner asserts that "it is very likely the conviction rested on both theories and that there was insufficient evidence to sustain a guilty verdict on a theory of premeditated murder."

In *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the Supreme Court held that a conviction under an instruction that did not require the jury to unanimously agree upon one of the alternative theories of premeditated murder and felony murder did not constitute a denial of due process. The Court explained that it had "never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission." *Id.* at 631, 111 S.Ct. 2491. Citing *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring), petitioner himself acknowledges that juries are not required to agree on the theory of guilt. As Justice Blackmun observed in *McKoy:* "Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case. But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." 494 U.S. at 449, 110 S.Ct. 1227.

Despite his acknowledgment that juries typically need not agree on a theory of guilt, petitioner asserts that the failure to give an instruction requiring unanimity of theory in his case violated due process because the evidence on the premeditated murder theory was insufficient. Petitioner, however, has offered no support for his contention that "there was insufficient evidence to sustain a guilty verdict on a theory of premeditated murder." Rule 28(a)(9) of the Federal Rules of Appellate Procedure requires that a party's brief include "the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." Peti-

tioner has made no attempt to elaborate upon this argument. "It is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Elder,* 90 F.3d 1110, 1118 (6th Cir.1996) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990)). The mere assertion by the petitioner that "there was insufficient evidence," without more, cannot support a finding of deprivation of due process.

### C.

▉ Petitioner claims that the trial court failed to instruct the jury on the elements of attempted robbery. Specifically, petitioner asserts that "[t]he trial judge merely stated in passing that Petitioner could be convicted even if the robbery was not completed" and argues that "[a] conviction based upon such a faulty, vague instruction cannot stand" As the district court observed, petitioner's characterization of the trial judge's instruction fails to withstand close scrutiny. The challenged instruction reads as follows:

> Robbery has been defined to be a felonious taking of money or goods of any value from the person of another in his or her presence against his will by violence or putting in fear . . .
>
> I have said by force or violence or by putting in fear. It isn't necessary that the robbery be completed or consummated. There may be under the statute here only an attempt. *That is an act which if not frustrated would have resulted in a crime.*
>
> To be guilty of robbery, a robber may be armed or unarmed, and either type if a killing results, while perpetrated or in an attempt to perpetrate, it would be murder in the first degree.

(emphasis added). As the foregoing passage indicates, the trial judge did in fact offer a correct definition of attempt. Moreover, as previously noted, federal habeas relief on the basis of a flawed jury instruction is granted only if the instruction is so erroneous as to have rendered the entire trial fundamentally unfair. "If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *Austin v. Bell,* 126 F.3d 843, 846 (6th Cir.1997) (citing *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Here, assuming some ambiguity in the instruction, petitioner has not pointed to any evidence in the record which suggests that the jury improperly applied the challenged instruction. As a result, petitioner has failed to establish that he was deprived of due process with respect to the instruction on attempt.

### D.

At the conclusion of the trial, the state trial judge gave the following instruction on "reasonable doubt" to the jury:

> Now I will tell you what in law we consider reasonable doubt. In reality, it means just what the word says. *It means an honest doubt.* It is sometimes defined as reasonable doubt, that a reasonable doubt is not a vain, a capricious, an imaginary or possible doubt, *but fair doubt,* a doubt based on reason and common sense. It is a doubt which grows with evidence or lack of evidence in the case, and it is such a doubt that you cannot say, after you have heard all the competent testimony that you have *an abiding conviction to a moral certainty* of the defendant's guilt. If you have such a doubt, it is your duty to acquit the defendants. That means to find them not guilty. If you have no

such doubt, it is equally your duty to convict the defendants, and that means to find them guilty of murder in the first degree.

(emphasis added). Petitioner argues that the reasonable doubt instruction was improper because the phrase "moral certainty" "emphasizes a sense of morality over a certainty that is firmly based upon the evidence presented at trial." Petitioner also claims that the use of the phrases "honest doubt" and "fair doubt" have "the potential to mislead."

■ We have held that "[t]he Due Process Clause requires only that the instruction not lead the jury to convict on a lesser showing than 'reasonable doubt' and, when taken as a whole, adequately conveys the 'concept' of reasonable doubt." *Binder v. Stegall,* 198 F.3d 177, 179 (6th Cir.1999). The challenged instruction satisfies this standard. In *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Supreme Court held that the use of the term "moral certainty" does not necessarily render a reasonable doubt instruction unconstitutional. Rather, the Court found that the phrase "moral certainty" is constitutionally permissible where the rest of the instruction "lends content to the phrase." *Id.* at 14, 114 S.Ct. 1239. The jury instruction at issue in *Victor* stated:

Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel *an abiding conviction, to a moral certainty,* of the truth of the charge.

*Id.* at 7, 114 S.Ct. 1239 (emphasis added). The Court explained that "[i]nstructing the

jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase 'moral certainty' might be misunderstood in the abstract." *Id.* at 21, 114 S.Ct. 1239. In this case, the phrase "moral certainty" is used in almost the identical context as in *Victor,* with the "abiding conviction" language lending content to the phrase "moral certainty." Consequently, the use of the phrase was not improper.

Petitioner's objections to the phrases "honest doubt" and "fair doubt" are also unavailing. In *Binder,* we examined the following instruction on reasonable doubt:

A reasonable doubt is a *fair, honest doubt* growing out of the evidence or lack of evidence. It is not merely an imaginary doubt or possible doubt, but a doubt based upon reason and common sense. A reasonable doubt is just that a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case.

198 F.3d at 178 (emphasis added). The habeas petitioner in *Binder* argued that "comparing a reasonable doubt to a 'fair, honest doubt' lowered the government's burden of proof." *Id.* at 179. Rejecting this argument, we concluded that "[t]aken as a whole the instruction informed the jury that it could convict only if the prosecution established guilt beyond a reasonable doubt and that the decision had to be based on a careful examination of the evidence." *Id.* Similarly, in this case the burden of proof was not lowered by the use of the phrases "fair doubt" and "honest doubt." The instruction on "reasonable doubt." taken as a whole, adequately conveyed the concept to the jury and did not constitute a denial of due process.

E.

According to the petitioner, during the trial "a spectator, in a voice loud enough to

be heard by counsel and the defendants, repeatedly uttered the words 'murderers and killers,' apparently referring to the defendants."[1] Although petitioner acknowledges that the court "gave general admonitions to the jury to be fair to both sides and presume the defendants innocent until proven guilty," petitioner argues that these measures were insufficient. Petitioner claims that the trial judge was required to "conduct a hearing to determine whether it had impacted the jury."

 We have upheld a trial court's refusal to conduct an evidentiary hearing "[w]here the communication is innocuous and initiated by a spectator in the form of an outburst." *White v. Smith*, 984 F.2d 163, 166 (6th Cir.1993.) In *White*, the defendant's mother said, "I will pray for you," to the jury in the courtroom as the jury was retiring to deliberate. Noting that the trial judge had made "a statement to the jury, allaying any apprehensions," we stated: "We cannot conclude ... that the Constitution requires a trial court to *sua sponte* conduct a full-blown evidentiary hearing every time a courtroom spectator makes a comment within the jury's hearing." *Id.* at 166–67.

In this case, although the outburst made by the spectator may not have been as innocuous as that made in *White*, the trial judge asked the jurors if there was any reason they could not render a fair and impartial verdict based on "the facts that come from the witness stand and the law as I give it to you, without bias, without sympathy, without fear, and without prejudice." Every juror responded negatively. The failure to conduct a hearing thus does not violate due process.

1. Although the statement does not appear in the record, respondent concedes that "out-

### III.

For the reasons set forth above, we affirm the district court's decision to deny petitioner's request to grant habeas corpus relief.

bursts" were made by the victim's wife during trial.