Gregory ALEXANDER, Petitioner,

v.

David SMITH, Respondent.

No. 02–CV–74852–DT.

United States District Court, E.D. Michigan, Southern Division.

Oct. 29, 2004.

---

Craig A. Daly, Detroit, MI, for plaintiff.

Brenda E. Turner, Lansing, MI, for defendant.

### OPINION AND ORDER DISMISSING PETITION IN PART AND REFERRING REMAINING CLAIMS TO THE MAGISTRATE JUDGE

ROSEN, District Judge.

Petitioner Gregory Alexander has filed an application for a writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state court conviction for first-degree murder. The Court has concluded, for the reasons given below, that claims I through III, V through VIII, X through XII, and portions of claim IX must be **DISMISSED**. The Court will refer Claim IV, the related portion of claim IX, and claim XIII to the assigned Magistrate Judge for an evidentiary hearing and a Report and Recommendation.

## I. BACKGROUND

On July 2, 1998, a circuit court jury in Calhoun County, Michigan found Petitioner guilty of first-degree murder, MICH. COMP. LAWS § 750.316. The conviction arose from the fatal shooting of Termain Watson on May 2, 1996, in Battle Creek, Michigan while Watson and a friend were seated in a car. The trial court sentenced Petitioner to life imprisonment without the possibility of parole.

Petitioner raised his first three habeas claims in an appeal of right. The Michigan Court of Appeals was unpersuaded by Petitioner's claims and affirmed his conviction in an unpublished, *per curiam* opinion. *See People v. Alexander*, 2000 WL

33534581, No. 213899 (Mich.Ct.App. Feb.8, 2000). On August 22, 2000, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Alexander*, 463 Mich. 860, 617 N.W.2d 334 (2000).

Petitioner subsequently filed a motion for relief from judgment, which the trial court denied due to "insufficient merit in any of the grounds." Petitioner raised habeas claims IV through XIII on appeal from the trial court's decision. The Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Alexander*, No. 236770 (Mich.Ct.App. Nov. 30, 2001). On July 29, 2002, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Alexander*, 467 Mich. 854, 649 N.W.2d 78 (2002). Petitioner filed his habeas corpus petition through counsel on December 6, 2002. His grounds for relief read as follows:

I. Petitioner Alexander was denied his constitutional rights under the Fifth and Fourteenth Amendments when the prosecutor commented on his right not to testify.

II. Petitioner Alexander was denied due process and a fair trial when the state trial court allowed the prosecutor to call a surprise witness at the end of the State's case.

III. Petitioner was deprived of his right to due process when the prosecutor argued for a conviction based on a community protection argument.

IV. Petitioner was deprived of his Sixth Amendment right to counsel when the State used testimony from an incarcerated informant that Petitioner allegedly confessed to the crime.

V. Petitioner Alexander was denied his right to an impartial jury and a fair trial when the court dismissed the only African–American juror without sufficient cause.

VI. Petitioner Alexander was denied his right to a fair and impartial jury when the court and attorneys failed to conduct a hearing and investigate a juror's prior relationship to the prosecutor's key witness.

VII. Petitioner Alexander was denied due process of law and a fair trial when the State and the defense failed to produce a critical *res gestae* witness.

VIII. Petitioner was denied due process of law and a fair trial when the prosecutor secured a conviction based on the false testimony of Jeffrey Ragland and Antonio Postell.

IX. Petitioner Alexander was denied his right to effective assistance of trial counsel.

X. Petitioner is entitled to an evidentiary hearing.

XI. Petitioner's purported waiver of his constitutional right to testify in his own behalf was not established by the trial court as being free, knowing and intelligent.

XII. The cumulative effect of the errors committed during Petitioner's trial require relief because he did not receive a fair trial under the Federal Constitution.

XIII. Petitioner Alexander has established an entitlement to relief from the judgment of his conviction and sentence by demonstrating good cause for the failure to

raise his present claims on direct appeal or in a prior motion and actual prejudice from the alleged irregularities in this criminal process, and therefore, the claims are not procedurally defaulted.

Respondent urges the Court to deny the habeas petition on the grounds that Petitioner's claims lack merit and are procedurally defaulted.

## II. DISCUSSION

### A. Claims I through III

The first habeas claim alleges that the prosecutor deprived Petitioner of his constitutional right not to testify and not to have his silence used against him. This claim arose when the prosecutor asked prospective jurors during *voir dire* whether they thought it would be helpful to hear the facts from someone who was present during the crime. The second habeas claim alleges that the trial court deprived Petitioner of his constitutional rights when the court permitted the prosecutor to call Antonio Postell as a witness at the close of the prosecutor's case in chief. The third habeas claim alleges that the prosecutor deprived Petitioner of his right to due process by making a community protection argument. Respondent maintains that these claims are procedurally defaulted because Petitioner failed to object to the claimed errors at trial.

### 1. Procedural Default

██ A procedural default in the habeas context is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). The doctrine of procedural default provides that,

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal

habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

██ In *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986), the Sixth Circuit set forth a four-part test for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review. Courts must determine whether: (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state courts actually enforced the rule; and (3) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error. *Id.* at 138.

A procedural rule is "adequate" if it is "firmly established and regularly followed" by the time it is applied. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). A rule is an independent basis for a state court's disposition if the state court actually relied on the rule. *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

The procedural rule in question here is the contemporaneous-objection rule, which is enforced in Michigan. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.2003), *cert. denied*, 540 U.S. 1004, 124 S.Ct. 535, 157 L.Ed.2d 409 (2003). Petitioner violated the rule by not objecting at trial to the prosecutor's comments during *voir dire* and in the rebuttal argument and by ap-

pearing to acquiesce in the prosecutor's late endorsement of Antonio Postell.

■ The Michigan Court of Appeals enforced the contemporaneous-objection rule by stating that the issues were not preserved. When reviewing claim I about the prosecutor's question during *voir dire,* the court of appeals stated that Petitioner "failed to object when the issue arose and neglected to raise the issue at a time when the trial court could have addressed it." *Alexander,* Mich. Ct.App. No. 213899, 2000 WL 33534581 at 1. Regarding claim II (late endorsement of a witness), the court of appeals stated that, "although defendant originally objected, he subsequently waived his objection and, therefore, this issue is not preserved." *Id.,* at 2. As to claim III (the prosecutor's community protection argument), the court of appeals said, "Defendant did not object to the alleged prosecutorial misconduct and thus review of this issue is precluded unless a curative instruction could not have eliminated the prejudicial effect of the remarks or failure to consider this claim would result in a miscarriage of justice." *Id.*

The contemporaneous-objection rule was an adequate basis for the state court's ruling because the rule was firmly established and regularly followed before Petitioner's 1998 trial. *See, e.g., People v. Ullah,* 216 Mich.App. 669, 679, 550 N.W.2d 568, 574 (1996) (citing *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994)). The rule was an independent basis for the state court's disposition because the state court actually relied on Petitioner's procedural error. The state court's alternative holdings do not preclude this Court from concluding that the federal claims are procedurally defaulted. As the Supreme Court explained in *Harris,*

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground

doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller,* 296 U.S. 207, 210, 56 S.Ct. 183, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes,* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. 1038 (emphasis in original); *cf. Stewart v. Smith,* 536 U.S. 856, 860, 122 S.Ct. 2578, 153 L.Ed.2d 762 (2002) (stating that, "if the state court's decision rested primarily on a ruling on the merits . . . , its decision would not be independent of federal law"). Therefore, in order for this Court to consider claims I through III on the merits, Petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

### 2. Cause and Prejudice

■ Petitioner alleges in claim IX that his trial attorney should have objected to the prosecutor's improper remarks and should have continued his objection to the late endorsement of Antonio Postell. Although constitutionally ineffective assistance of counsel is "cause" for a procedural default, *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), Petitioner's claim about his trial attorney is itself procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (holding

that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Petitioner failed to raise his ineffectiveness claim on direct review, and when he raised the claim on state collateral review, the State's appellate courts denied relief under Michigan Court Rule 6.508(D). *See infra* Section II.B.

An ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim may itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim. *Carpenter*, 529 U.S. at 453, 120 S.Ct. 1587. Petitioner argues in claim XIII that his appellate attorney was "cause" for the failure to raise some of his habeas claims on direct review.

To show a violation of the Sixth Amendment right to effective assistance of counsel, Petitioner must establish that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. To establish that an attorney's deficient performance was prejudicial, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■ Appellate counsel was not ineffective for failing to allege that trial counsel should have objected to the prosecutor's comments during *voir dire*, because the comments did not refer to Petitioner's silence. The prosecutor merely pointed out that he intended to use witnesses who had made a deal with the prosecution for their testimony and that he was using those witnesses because they were present when the crime occurred and could explain what had happened. The prosecutor apparently wanted to know whether the jurors could accept the testimony of a participant in the crime. (Tr. June 23, 1998, at 71–78).

The prosecutor's "community protection" argument was not a basis for objection, because the argument did not appeal to the jurors' fears and emotions. The prosecutor was responding to defense counsel's closing argument about the number, type, location, and testing of the guns used in the crime.[1]

---

1. The disputed remarks, shown below in italics, should be viewed in context:

 This bit about how many guns and where they were, and I think he went a couple different ways. Number one, it's not clear that Jeff Ragland had a 380. It's clear that he had one, if you want to believe Troy Lewis at some point, last summer. And does that mean that it was the 380 that was at this scene? Well, there's no evidence of that. Is there any testimony that Mr. Lewis told the Police, or anyone else, that he received this from Jeff Ragland back then so that all of this testimony that [defense counsel] suggests should have been done could have been done? There's no evidence of that. There is no connection with

that gun to this case, and that's where common sense is going to come into play again. *How many hand guns do you think the Battle Creek Police Department take off the streets of Battle Creek? How many guns have you seen here today and through the course of this trial[?]. How many guns do you think over the course of two and a half years the Battle Creek Police have taken off the street, and is it reasonable for them to, every time they get a gun that matches the caliber that was used in a murder at some point, to send that to the State Police Crime Lab?* I'm going to tell you that there's people up there .... (Inaudible) resources. Can't do it. There's some evidence that links a weapon to a particular crime.... So

Defense counsel's failure to continue objecting to the late endorsement of Antonio Postell likely was due to his ability to investigate and prepare for cross-examination of Postell before the trial court ruled on the issue. It appears that the failure to continue objecting was the result of a strategic decision to attack Postell's credibility rather than to oppose the late endorsement. (Tr. June 30, 1998, Vol. VII, at 3).

The Court concludes that defense counsel's failure to make contemporaneous objections to the errors alleged in grounds I through III did not constitute ineffective assistance of counsel. Therefore, appellate counsel's failure to allege that trial counsel was ineffective did not constitute deficient performance, and Petitioner has not shown "cause" for his noncompliance with the State's contemporaneous-objection rule. The Court need not determine if Petitioner was prejudiced by the alleged violations of federal law because he has not shown "cause." *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

### 3. Miscarriage of Justice

■■ The remaining question is whether this Court's failure to consider the substantive merits of Petitioner's first three claims will result in a miscarriage of justice. The narrow exception for miscarriages of justice requires showing that a constitutional violation probably resulted

in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).[2]

Although Petitioner alleges that he is serving a life sentence for a crime that he did not commit, he has not shown that, in light of some new and reliable evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 329, 115 S.Ct. 851. Accordingly, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of claims I through III. Petitioner's state procedural default of failing to make the proper objections at trial bars habeas review of those claims.

### B. Procedural Default and the Remaining Claims

Petitioner raised the remaining substantive claims (IV through IX, and XI through XII) for the first time in a motion for relief from judgment following the direct appeal.[3] Michigan Court Rule 6.508(D) prohibits granting relief from judgment if the defendant

---

there is no evidence that that 380 had anything to do with this case.
(Tr. July 1, 1998, at 74–75) (emphasis added).

2. The Supreme Court recently declined to answer the question whether the actual innocence exception applies to procedural default of constitutional claims challenging noncapital sentencing errors. *See Dretke v. Haley,* 541 U.S. 386, 124 S.Ct. 1847, 1852, —— L.Ed.2d —— (2004). The Court held instead "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and

other grounds for cause to excuse the procedural default." *Id.*

3. Claim X is not a substantive issue; it alleges that Petitioner is entitled to an evidentiary hearing. Claim XIII alleges "cause" for Petitioner's procedural defaults, resulting prejudice, and a miscarriage of justice. To the extent that Petitioner is raising an independent claim regarding his appellate counsel, the claim is not procedurally defaulted, because appellate counsel could not be expected to complain of his own ineffectiveness on direct appeal.

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence ... unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal ..., and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3) (effective October 1, 1989). This rule "governs the procedures for collateral appeals and denies relief if the defendant alleges claims that could have been raised in the direct appeal from the conviction." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir.2003).

Petitioner violated Rule 6.508(D) by not raising claims IV through IX and XI through XII on direct appeal from his conviction. The last two courts to review the claims were the Michigan Court of Appeals and the Michigan Supreme Court. Both state courts denied leave to appeal in brief orders, stating that Petitioner failed to establish an entitlement to relief under Michigan Court Rule 6.508(D).

Rule 6.508(D) was an adequate basis for the state courts' rulings because it was firmly established and regularly followed before Petitioner's trial and subsequent appeal.[4] The rule was an independent basis for the state courts' dispositions because the courts actually relied on it. The brief appellate orders stating that Petitioner was not entitled to relief under Rule 6.508(D) were sufficient explanations for this Court to conclude that the orders were based on a procedural default. *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir.), *modified on other grounds*, 35 Fed. Appx. 402 (6th Cir.2002).

To summarize, all of the elements of procedural default have been satisfied. Therefore, Petitioner is entitled to consideration of claims IV through IX and XI through XII only if he can establish cause for his procedural default and resulting prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

Petitioner alleges in claim XIII that appellate counsel was cause for his failure to raise his claims on direct appeal. "If [Petitioner] can show that he received ineffective assistance of appellate counsel that rose to the level of a violation of his Sixth Amendment rights, it would excuse his procedural default." *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002), *cert. denied*, 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002), *and cert. denied*, 539 U.S. 938, 123 S.Ct. 2601, 156 L.Ed.2d 624 (2003).

Yet, appellate counsel need not raise every nonfrivolous argument on direct appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). To be sure, " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones*, 463 U.S. at 751–52, 103 S.Ct. 3308). Appellate counsel, however, is required to exercise reasonable professional judgment. *Jones*, 463 U.S. at 753, 103 S.Ct. 3308.

*Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir.2003).

As the Supreme Court has recently observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney

---

**4.** Rule 6.508(D) was regularly followed as of 1990. *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.2000) (citing *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir.2000); *Jones v. Toombs*, 125 F.3d 945, 947 (6th Cir.1997)). Petitioner was tried in 1998.

presents one argument on appeal rather than another. *Smith v. Robbins,* 528 U.S. 259, 289, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289, 120 S.Ct. 746. *Caver,* 349 F.3d at 348. With these considerations in mind, the Court will proceed to address Petitioner's substantive claims to determine whether Petitioner's appellate attorney should have raised the claims on direct appeal from the conviction.

## C. The Right to Counsel During an Alleged Interrogation by a Fellow Inmate

The fourth habeas claim alleges that Petitioner was deprived of his Sixth Amendment right to counsel when a fellow inmate, Antonio Postell, elicited incriminating comments from him in the absence of counsel. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The "right to counsel is triggered at or after the time that judicial proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Fellers v. United States,* 540 U.S. 519, 124 S.Ct. 1019, 1022, 157 L.Ed.2d 1016 (2004) (internal quotations and citations omitted). "[T]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *see also Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (holding that the basic protections of the Sixth Amendment were violated when incriminating statements deliberately elicited from the petitioner after he had been indicted, but in the absence of counsel, were used against him at trial).

Petitioner contends that his incriminating statements should have been suppressed because Antonio Postell purportedly elicited these statements in the absence of Petitioner's attorney after Postell agreed to cooperate with the police. Respondent argues that the statements were properly admitted, however, where there is no indication in the record that the police affirmatively directed Postell to elicit incriminating statements from Petitioner in violation of his right to counsel, or that Postell otherwise had been enlisted as a state agent at the time Petitioner made these statements.

The record indicates that Petitioner made damaging statements to Postell when the two men were confined in adjacent jail cells during Petitioner's trial. It further appears that Postell bargained with the prosecution for a favorable disposition of his own case in exchange for his agreement to testify about Petitioner's incriminating statements at Petitioner's ongoing trial. Petitioner's right to counsel had attached at the time of his jailhouse conversations with Postell, but his attorney undeniably was not present during these conversations.

Under these circumstances, the central question is whether Antonio Postell was acting as an agent of the State when Petitioner made incriminating statements to him. In a series of decisions, the Supreme Court has addressed the circumstances under which the Sixth Amendment bars the admission of post-indictment statements made by a defendant to a cellmate or informant. *See Kuhlmann v. Wilson,* 477 U.S. 436, 456–60, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *Moulton,* 474 U.S. at 171–77, 106 S.Ct. 477; *United States v. Henry,* 447 U.S. 264, 269–74, 100 S.Ct.

2183, 65 L.Ed.2d 115 (1980); *Massiah,* 377 U.S. at 204–06, 84 S.Ct. 1199. Under these rulings, once the right to counsel has attached, the State may not "knowing[ly] exploit[ ] ... an opportunity" to bypass the defendant's constitutional guarantee of counsel by using an undisclosed state agent to "deliberately elicit" incriminating statements from the defendant outside the presence of his attorney. *Moulton,* 474 U.S. at 173–76, 106 S.Ct. 477.

The Supreme Court has emphasized, however, that "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." 474 U.S. at 176, 106 S.Ct. 477. Thus, in a number of appellate decisions, the courts have upheld the prosecution's use of incriminating statements made by a defendant in custody to a fellow inmate or jailhouse visitor, where the latter individual had not arranged in advance with the police or prosecutor to elicit information from the defendant, and where there otherwise was no indication that the government had directed or controlled the informant's interaction with the defendant. *See, e.g., United States v. Watson,* 894 F.2d 1345, 1347–48 (D.C.Cir.1990); *Lightbourne v. Dugger,* 829 F.2d 1012, 1019–21 (11th Cir.1987); *United States v. Surridge,* 687 F.2d 250, 254–55 (8th Cir.1982); *United States v. Malik,* 680 F.2d 1162, 1164–65 (7th Cir. 1982); *United States v. Calder,* 641 F.2d 76, 78–79 (2d Cir.1981).

Here, the record is not sufficiently developed to permit a determination as to whether Postell was acting as a state agent during his conversations with Petitioner. In particular, Petitioner mischaracterizes the record by implying that Postell reached an agreement with the prosecutor *before* the weekend during which he elicited incriminating statements from Petitioner. (*See* Petitioner's Br. in

Support of Petition at 26, 28–29.) Petitioner maintains that this purported agreement transformed Postell into an agent of the State, and that any statements he elicited from Petitioner over the weekend, therefore, should have been suppressed as the fruits of a Sixth Amendment violation.

In fact, as the Respondent points out, there is no evidence of any such prior agreement between Postell and the prosecutor. Rather, the record presently before the Court reflects that Petitioner first began to make incriminating statements to Postell, an inmate in an adjacent cell, on Thursday, June 25, 1998, the third day of Petitioner's trial. Postell contacted his attorney, who in turn contacted the prosecutor on Friday, June 26, 1998. Because of Petitioner's ongoing trial, the prosecutor stated that he was unable to immediately investigate the matter, and instead sent a detective to interview Postell that day. Postell continued his discussions with Petitioner over the weekend, asking questions that elicited further incriminating statements. The following Monday, June 29, 1998, the prosecutor conducted a videotaped interview of Postell, provided a copy of this videotape to defense counsel, and moved to endorse Postell as a witness at Petitioner's trial.

Postell largely confirmed this chronology in his trial testimony. He testified that he had conversations with Petitioner in the county jail on Thursday, June 25, 1998, and then again on Saturday the 27th and Sunday the 28th. During this period, he contacted his attorney, indicated that he had information that was relevant to Petitioner's case. Postell acknowledged that he sought an agreement concerning the charges against him in exchange for his testimony in Petitioner's case, that he actually reached such an agreement with the

prosecutor, and that he was testifying because of this agreement.

Notably lacking from this record, however, is any indication of the precise timing of Postell's agreement with the prosecutor. Prior to his meeting with the prosecutor on Monday, June 29, 1998, Postell's sole contact with any government agent was his Friday, June 26, 1998 meeting with a detective sent over by the prosecutor to interview him. Yet, there is no record whatsoever of what transpired during this Friday interview. This is a crucial evidentiary gap because, if Postell is to be deemed a state agent, it could *only* be as a result of what was said during his Friday, June 26, 1998 meeting with the detective.[5]

To see why this question is legally significant, consider two hypothetical conversations between Postell and the detective that day. First, suppose that the detective relayed an explicit promise from the prosecutor that Postell would be given more favorable treatment in his own case if he were able to elicit further incriminating statements from Petitioner over the weekend. In this event, it seems clear that such an express arrangement would transform Postell into a state agent, as he would have been acting under the direction of the State and with the clear understanding that he would be rewarded for his efforts on the prosecutor's behalf. *See Henry,* 447 U.S. at 270, 100 S.Ct. 2183.

On the other hand, suppose that the detective merely conveyed the prosecution's possible interest in the information Postell had obtained to that point and suggested that Postell keep listening for any further incriminating statements by Petitioner, but did not promise any favorable treatment in exchange for the information that Postell had obtained or might obtain over the weekend. The case law suggests

that this would not suffice to establish an agency relationship between Postell and the State. *See, e.g., Lightbourne,* 829 F.2d at 1019–21; *Surridge,* 687 F.2d at 254–55; *Calder,* 641 F.2d at 78–79. As one court has observed:

> Undoubtedly, most inmates who provide information to law enforcement officials harbor the hope that their service will not go unrewarded. But as the court cautioned in *Lightbourne v. Dugger,* 829 F.2d 1012, 1021 (11th Cir.1987), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988), "[w]e must not confuse speculation about [an informant's] motives for assisting the police for evidence that the police promised [the informant] consideration for his help or, otherwise, bargained for his active assistance." One might argue that merely by providing the market for information, the government violates the right to counsel, but that would be to overstate the government's role in most cases; the instinct for self-preservation is as sharply honed, if not more so, in prison as it is elsewhere. From the moment that suspects are arrested, they learn (if it had not already occurred to them) that cooperation with the authorities may benefit them. That inmates realize there is a market for information about crime does not make each inmate who enters the market a government agent. Moreover, we are reluctant to discourage prisoners from reporting information to appropriate authorities; they, like all citizens, should report such information. *See Lightbourne,* 829 F.2d at 1020. It is merely a tautology to argue that the government should not be in the business of providing a market for information that infringes sixth amendment rights; there is no infringe-

---

**5.** Even if Postell became a state agent at this point, of course, Petitioner concedes that this would not preclude the admission of any in-

criminating statements he already had made to Postell the day before.

ment unless the informant was a government agent, and there is no agency absent the government's agreement to reward the informant for his services. *United States v. York,* 933 F.2d 1343, 1357 (7th Cir.1991), *overruled on other grounds, Wilson v. Williams,* 182 F.3d 562 (7th Cir.1999); *see also Watson,* 894 F.2d at 1348 (finding that the informant in that case "was acting as an entrepreneur," and not a government agent).

The record simply fails to reflect whether Postell's meeting with the detective was similar to one of the above hypothetical scenarios, or whether it fell somewhere within the wide spectrum between these two possibilities. The Court may not "remand" this case to the state court for additional findings of fact. *Harris v. Stovall,* 212 F.3d 940, 943 n. 1 (6th Cir.2000). Rather, a federal evidentiary hearing is necessary to resolve the various issues of material fact bearing upon Petitioner's Sixth Amendment challenge to Postell's testimony.[6]

Accordingly, the Court reserves judgment on claim IV, the portion of claim IX that alleges trial counsel should have objected to Antonio Postell's testimony on Sixth Amendment grounds, and claim XIII regarding appellate counsel's failure to raise these Sixth Amendment and ineffective assistance issues on appeal. These claims are referred to the Magistrate Judge for an evidentiary hearing and Report and Recommendation. The Magistrate Judge shall explore the relevant issues, including whether (1) Antonio Postell was an agent of the State when he elicited incriminating information from Petitioner on June 27 and 28, 1998, (2) trial counsel was ineffective for not objecting to Postell's testimony on Sixth Amendment grounds, and (3) appellate counsel was ineffective for not raising Petitioner's fourth claim and the related claim about trial counsel on appeal.

## D. Claims V through VIII and XI

The remaining substantive claims (V—IX and XI—XII) were raised for the first

---

6. "Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'" *Stanford v. Parker,* 266 F.3d 442, 459 (6th Cir.2001) (quoting *Wilson v. Kemna,* 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)), *cert. denied,* 537 U.S. 831, 123 S.Ct. 136, 154 L.Ed.2d 47 (2002). Here, the nature and timing of the agreement between the State and Antonio Postell are in dispute, the state court did not hold an evidentiary hearing, and Petitioner has stated an arguable claim under the Sixth Amendment.

Respondent asserts that Petitioner is not entitled to a federal evidentiary hearing because Petitioner failed to develop the factual basis for his claim in state court. The Court recognizes that a habeas petitioner is precluded from having a federal evidentiary hearing if, through lack of diligence or some fault of his own, he failed to develop the facts in state court. *See* 28 U.S.C. § 2254(e)(2). The

phrase "failed to develop" implies some lack of diligence or some greater fault attributable to the prisoner or the prisoner's counsel. *Williams v. Taylor,* 529 U.S. 420, 430, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). "If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Id.* at 437, 120 S.Ct. 1479.

Respondent maintains that Petitioner is precluded from obtaining an evidentiary hearing in federal court because he did not develop the facts at the time of his direct appeal. However, the relevant stage of state proceedings was the collateral attack on Petitioner's conviction. In his motion for relief from judgment and subsequent appeals, Petitioner repeatedly asked for an evidentiary hearing. The Court therefore concludes that Petitioner is not precluded from having an evidentiary hearing in federal court on his Sixth Amendment and related challenges.

time in Petitioner's motion for relief from judgment and subsequent appeals. These claims are procedurally defaulted because Petitioner neglected to raise the claims on direct review and because the state appellate courts' denial of relief was based on an independent and adequate state procedural bar. Therefore, Petitioner must show "cause and prejudice" or a miscarriage of justice for this Court to consider the claims on their merits.

Petitioner alleges that appellate counsel was "cause" for his failure to raise his claims on direct appeal. The following discussion explains why appellate counsel was not ineffective for failing to raise claims V through VIII and XI on direct appeal.[7]

### 1. Excusing a Juror for Cause

 The fifth habeas claim alleges that Petitioner was denied his right to an impartial jury and a fair trial when the trial court dismissed the only African–American juror, Dennis Smith, without sufficient cause. This claim arose mid-trial when the trial court became aware of comments that Smith made to the court's bailiff regarding Smith's job, health, and safety. In the privacy of the trial court's chambers, Smith informed the trial judge and attorneys that he did not think his concerns were interfering with his ability to be fair and impartial. He intimated, however, that the State had not proved its case. Defense counsel left the matter up to the trial court's discretion because counsel was not sure that Smith was being candid. (Tr. June 26, 1998, proceedings held in chambers).

The trial court subsequently excused Smith for cause, because of Smith's "significant physical discomfort" and because of the court's "grave concern" that Smith

had formed a conclusive opinion in the case. The court was not convinced that Smith could render an impartial verdict in keeping with the law. (Tr. June 26, 1998, Vol. VII, at 31–33). Because Smith's race apparently played no part in the trial court's decision and because defense counsel did not object to the removal of Smith from the jury, appellate counsel was not ineffective for failing to raise Petitioner's fifth habeas claim on appeal.

### 2. Juror Familiarity with a Prosecution Witness

Immediately before Antonio Postell testified, Juror Longstreth informed the trial court that she thought she knew Postell.[8] Petitioner alleges in claim VI that he was denied his right to a fair and impartial jury when the trial court failed to conduct a hearing on juror Longstreth's prior relationship to Antonio Postell.

Private communications with a juror during a criminal trial generally require the trial court to hold a hearing to determine the impact of the communication on the juror and whether it was prejudicial. *Remmer v. United States,* 347 U.S. 227, 229–30, 74 S.Ct. 450, 98 L.Ed. 654 (1954). However, not all communications with jurors warrant a full-blown hearing for a determination of potential bias, particularly when defense counsel did not request a hearing. *White v. Smith,* 984 F.2d 163, 166 (6th Cir.1993).

 The trial court conducted a brief inquiry during which juror Longstreth stated that she was not well acquainted with Postell and that she last saw him "a long time ago." She also said that she could weigh his testimony by the same standards as anyone else and that she

---

7. The Court will discuss claims IX and XII separately.

8. Postell's name was not read to the jury during *voir dire* because he was not endorsed as a witness until mid-trial.

could set aside her knowledge of Postell from previous contacts with him. Neither the prosecutor nor defense counsel had any questions for Longstreth, and the trial court permitted her to remain on the jury. (Tr. June 30, 1998, Vol. VII, at 6–8).

In the absence of a request for a hearing and inasmuch as Longstreth maintained that she had not seen Postell recently and could weigh his testimony objectively, the trial court was not remiss in failing to conduct a full-blown hearing. Therefore, appellate counsel was not ineffective for failing to raise Petitioner's claim about juror Longstreth on direct appeal.

### 3. Failure to Produce a *Res Gestae* Witness

Petitioner's seventh habeas claim alleges that he was denied due process of law and a fair trial when the prosecutor and defense counsel failed to produce Gino Fambro as a witness. According to Petitioner, Fambro saw Guy Portes and Jamie Wyrick shoot Termain Watson.

 The record does not indicate why Fambro was not called as a witness. However, other witnesses to the shooting testified that six people shot at the victim, that several different guns were used, and that dozens of shots were fired. Fambro's statement to the police that Portes and Wyrick fired at Termain Watson did not rule out the possibility that Petitioner participated in the shooting or aided and abetted the other shooters. *See* Petition for Writ of Habeas Corpus, Exhibit A. Therefore, appellate counsel was not ineffective in failing to raise Petitioner's seventh habeas claim on direct appeal.

### 4. Use of Allegedly Perjured Testimony

The eighth habeas claim alleges that the prosecutor used the false testimony of Jeffrey Ragland and Antonio Postell to convict Petitioner. In support of this claim,

Petitioner alleges that two other witnesses explicitly contradicted Ragland and Postell in a subsequent trial of one of Petitioner's co-defendants, who was acquitted.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, to prevail on a claim of perjury, a defendant "must show that the statements were material, that they were actually false, and that the prosecution knew they were false." *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir.1992).

 Petitioner has not shown that Ragland and Postell perjured themselves. Ragland was present during the shooting of Termain Watson. Postell's testimony corroborated Ragland's testimony, and Postell claimed that his only source of information was Petitioner. The fact that two other witnesses testified differently from Ragland and Postell in a co-defendant's trial does not mean that Ragland and Postell committed perjury at Petitioner's trial. Therefore, appellate counsel was not ineffective for failing to allege that Ragland and Postell committed perjury.

### 5. On the Record Waiver of the Right to Testify

 The eleventh habeas claim concerns the trial court's failure to establish on the record that Petitioner's waiver of his constitutional right to testify was made freely, knowingly, and intelligently. Petitioner had a right to testify in his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). However, trial courts are not "required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify." *United States v. Webber*, 208 F.3d

545, 551 (6th Cir.2000). Nor are trial courts required to ensure that the defendant waived the right on the record. *Id.; People v. Simmons,* 140 Mich.App. 681, 684, 364 N.W.2d 783, 785 (1985). Petitioner's assent in the decision not to testify is presumed because he gave no indication at trial that he wanted to testify. *Gonzales v. Elo,* 233 F.3d 348, 357 (6th Cir.2000). Therefore, appellate counsel was not ineffective in failing to raise Petitioner's claim about the lack of an on-the-record waiver of the right to testify.

### 6. Summary

For all of the reasons given above, the Court believes that appellate counsel's failure to raise claims V through VIII and XI did not amount to deficient performance and did not prejudice the appeal. Thus, ineffective assistance of appellate counsel does not excuse Petitioner's procedural default of failing to raise claims V through VIII and XI on direct appeal.

The Court need not determine if Petitioner was prejudiced by the alleged violations of federal law because he has not shown "cause" for his noncompliance with Michigan Court Rule 6.508(D)(3). *Smith,* 477 U.S. at 533, 106 S.Ct. 2661. The exception for miscarriages of justice does not apply here because Petitioner has not presented the Court with any new and reliable evidence of actual innocence. Therefore, claims V through VIII and XI are procedurally defaulted.

### E. Assistance of Trial Counsel

The ninth habeas claim alleges ineffective assistance of trial counsel. Petitioner contends that his trial attorney failed to: properly investigate and prepare for trial; adequately present the defense; object when required; and request appropriate jury instructions. More specifically, Petitioner alleges that trial counsel's performance was deficient because: (1) he failed to continue his objection and seek a continu-ance when the prosecutor moved to endorse Antonio Postell as a witness; (2) failed to verify and produce the work records for Petitioner's alibi witness; (3) failed to object to the dismissal of juror Smith; (4) failed to object to Antonio Postell's testimony; (5) failed to request or produce Gino Fambro and Kevin Kendall as witnesses; (6) failed to object to the prosecutor's improper remarks during *voir dire* and closing arguments; (7) made concessions in his opening statement that reduced the burden of proof; (8) made inflammatory statements during *voir dire;* (9) failed to object to an erroneous reasonable doubt instruction and failed to request a cautionary instruction on use of an informant; and (10) failed to object to certain evidentiary errors.

The Court reserves judgment on whether trial counsel was ineffective for failing to object on constitutional grounds to Antonio Postell's testimony and whether appellate counsel was ineffective for failing to challenge this aspect of trial counsel's performance. *See supra* Section II.C. The remaining claims of ineffective assistance of trial counsel do not warrant habeas relief either because the underlying claims have no merit or because there is not a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

### F. Cumulative Effect of Errors

Claim twelve alleges that the cumulative effect of the errors committed during Petitioner's trial deprived him of a fair trial. This claim is procedurally defaulted like the other claims that Petitioner failed to raise on direct review. However, even if Petitioner could establish cause for the omission and resulting prejudice or a miscarriage of justice, the claim has no merit because "[t]he Supreme Court has not held that distinct constitutional claims can be

cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir.), *opinion corrected on denial of reh'g,* 307 F.3d 459 (2002), *and cert. denied,* 538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003). Therefore, the state courts' denial of relief was not contrary to any Supreme Court decision so as to warrant habeas relief. *Id.*

### G. Claim XIII

Petitioner's thirteenth and final claim alleges that Petitioner's claims are not procedurally defaulted because appellate counsel was "cause" for Petitioner's failure to raise his claims on direct review. The claim also alleges that prejudice resulted and that Petitioner is actually innocent. To the extent that Petitioner is raising an independent claim about his appellate attorney, the Court reserves judgment on whether appellate counsel should have asserted (1) Petitioner's fourth claim about Antonio Postell eliciting incrimination information from him and (2) the portion of Petitioner's ninth claim that alleges trial counsel should have objected to Postell's testimony on Sixth Amendment grounds. The Court concludes for reasons given in previous sections of this opinion that appellate counsel was not ineffective for failing to raise Petitioner's other claims on appeal.

### III. CONCLUSION

Petitioner procedurally defaulted his claims, and he has not shown "cause and prejudice" or a miscarriage of justice in connection with claims I through III, V through VIII, XI, and portions of claim IX. Claim X is not a substantive claim, and claim XII lacks merit even if it is not procedurally defaulted. Accordingly, claims I through III, V through VIII, and X through XII are **DISMISSED.** Claim IX is dismissed with the exception of the allegation that trial counsel should have

objected to informant Antonio Postell's testimony on Sixth Amendment grounds.

The unresolved question is whether Petitioner's appellate attorney was ineffective for failing to raise on appeal Petitioner's fourth claim and the portion of Petitioner's ninth claim that alleges trial counsel should have objected to Antonio Postell's testimony on Sixth Amendment grounds. Accordingly, claim IV and the related portions of claims IX and XIII are referred to the Magistrate Judge for an evidentiary hearing and a Report and Recommendation.