*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0391p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHELLE BAZZETTA, et al.,

　　　　　　　　*Plaintiffs-Appellees,*

　　　*v.*

KENNETH MCGINNIS, Director of Michigan
Department of Corrections; MICHIGAN
DEPARTMENT OF CORRECTIONS,

　　　　　　　　*Defendants-Appellants.*

No. 04-1823

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-73540—Nancy G. Edmunds, District Judge.

Argued: June 8, 2005

Decided and Filed: September 13, 2005

Before: CLAY and SUTTON, Circuit Judges; OBERDORFER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Lisa C. Ward, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Deborah A. LaBelle, LAW OFFICES OF DEBORAH LaBELLE, Ann Arbor, Michigan, for Appellees. **ON BRIEF:** Lisa C. Ward, Leo H. Friedman, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Deborah A. LaBelle, Patricia A. Streeter, LAW OFFICES OF DEBORAH LaBELLE, Ann Arbor, Michigan, Michael J. Barnhart, Detroit, Michigan, for Appellees.

---

## OPINION

---

OBERDORFER, District Judge. This case marks another chapter in a ten-year controversy between incarcerated felons, their visitors, and the Michigan Department of Corrections ("MDOC"). In 1995, MDOC issued regulations affecting prisoners' visitation privileges, including a permanent ban on virtually all visitation for prisoners found guilty of two or more substance abuse violations. After a bench trial, the district court ruled that MDOC's visitation limitations, including the

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

substance abuse regulation, violated the prisoners' constitutional rights under the First and Eighth Amendments and their Fourteenth Amendment substantive and procedural due process rights. A panel of this court affirmed the district court's judgment and the district court issued an order of compliance enjoining the MDOC from implementing the regulations. The Supreme Court granted the MDOC's petition for certiorari on the prisoners' First, Eighth and Fourteenth Amendment substantive due process claims and reversed this court's affirmance in *Overton v. Bazzetta*, 539 U.S. 126 (2003). The Court did not grant certiorari with respect to the plaintiffs' Fourteenth Amendment procedural due process claim, nor otherwise address it directly. On remand, the district court declined to dissolve its injunctive order of compliance, ruling that its procedural due process holding was not disturbed by the Supreme Court's decision.

MDOC appeals the district court's refusal to dissolve the injunction, arguing that although the Supreme Court did not grant certiorari on this court's procedural due process holding, it implicitly foreclosed any facial procedural due process challenges to the substance abuse regulation. Thus, at issue is whether the district court abused its discretion in failing to dissolve its injunctive order in light of *Overton*. For the reasons stated below, we hold that the district court abused its discretion because its procedural due process ruling is inconsistent with *Overton*. Accordingly, we REVERSE the district court's opinion and order denying MDOC's motion for summary judgment and granting the plaintiffs' motion to enforce compliance. Our reversal is without prejudice to any claim by an individual prisoner that the regulation, as applied to that prisoner, imposes an "atypical and significant hardship," thus implicating a protected liberty interest.

## I. BACKGROUND

In 1995, MDOC issued regulations limiting the visitation rights of prisoners, in part to control the widespread use of drugs and alcohol. *Overton*, 539 U.S. at 129-130. Among other limitations, the regulations authorize the Director of the MDOC to restrict permanently all visits for a prisoner who is found guilty administratively of "[t]wo or more violations of the major misconduct charge of substance abuse," *e.g.* possession of narcotics, alcohol, unauthorized prescription drugs, or drug paraphernalia, or for failure to submit to a drug test. *Bazzetta v. McGinnis*, 286 F.3d 311, 321 & n.2 (6th Cir. 2002) (internal quotations omitted). According to the substance abuse regulation, prisoners whose visits have been permanently restricted nevertheless receive visits from "attorneys or [their] representative[s], [or] qualified clergy and staff from the Office of the Legislative Corrections Ombudsman . . . ." *Bazzetta v. McGinnis*, 148 F. Supp. 2d 813, 833 (E.D. Mich. 2001). Inmates may also request that the visitation ban be lifted after six months or two years, depending on the underlying infractions. *Id.* Reinstatement of visitation privileges is within the warden's discretion. *Id.*

In August 1995, the plaintiffs, a class of prisoners incarcerated by MDOC, and their prospective visitors, challenged the substance abuse regulation on its face.[1] *Id.* at 815. They asserted that the permanent ban on visitors for two violations of the drug abuse policy: (1) infringed the prisoners' First Amendment right of intimate association and was not reasonably related to a valid penological objective; (2) constituted cruel and unusual punishment prohibited by the Eighth Amendment; and (3) violated the prisoners' Fourteenth Amendment procedural due process rights. *Id.* at 845-58. The case proceeded to a bench trial and, on April 19, 2001, the district court held that the regulations violated the prisoners' rights under the First, Eighth and Fourteenth Amendments. *Id.*

---

[1]The Plaintiffs also challenged regulations that: (1) excluded, from family members with whom inmates were entitled to non-contact visits, any minor nieces and nephews and children as to whom parental rights had been terminated; (2) required all children visiting an inmate to be accompanied by a family member or legal guardian; and (3) prohibited former inmates from visiting inmates. These regulations are not the subject of the instant appeal.

In addressing the plaintiffs' procedural due process claim, the court first asked whether Michigan prisoners have a liberty interest in visitation that had been infringed by the substance abuse regulation. *Id.* at 857. The court noted that a liberty interest arises from two distinct sources-- from the implicit guarantees of the Due Process Clause itself, or as a result of state action. *Id.* The court addressed only whether the prisoners derive a liberty interest from the state-issued substance abuse regulation. *Id.* Accordingly, it analyzed the regulations under the formulation established by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995)--that a liberty interest arises where the state's regulations impose "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In determining that the substance abuse regulation imposes an "atypical and significant hardship," the court considered (1) the effect of the restraint on the length of prison confinement; (2) the extent to which the prisoners' confinement is altered from routine prison conditions; and (3) the duration of the restraint. *Bazzetta*, 148 F. Supp. 2d at 857 (citing *Jones v. Baker*, 155 F.3d 810, 814 (6th Cir. 1998) (Gilman, J., concurring)). It acknowledged that the regulations do not affect the length of confinement but found that they create "an unusually harsh and punitive environment for the prisoners restricted." *Id.* at 858. Further, it found significant that the restriction on visitation is permanent--"[a]lthough the regulations provide for the possibility of review after two years, there are many instances where no such review occurs, or where reinstatement of privileges after two years is denied." *Id.*

Recognizing a liberty interest in visitation that had been infringed by the permanent visitation ban, the court then asked " 'whether the procedures attendant upon that deprivation were constitutionally sufficient.' " *Id.* at 857 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). It found many procedural problems with the implementation of the permanent visitation ban--notably that: (1) there are no written criteria to guide the Director of the MDOC's decision whether to impose the ban, resulting in inconsistent enforcement, *id.* at 836-37; (2) prisoners are not entitled to a hearing on the imposition of the permanent ban or an opportunity to challenge the ban based on unusual or extenuating circumstances, *id.* at 838, n.39; and (3) there are no ascertainable criteria for the restoration of visiting privileges, without any apparent uniform standard being applied, *id.* at 839. The court thus determined that "[t]he inconsistency and uncertainty of enforcement, the absence of any criteria for reinstatement, and the failure to provide any opportunity to be heard are all procedural deprivations of constitutional dimension." *Id.* at 858.

On April 16, 2002, a panel of this court affirmed the district court judgment for the plaintiffs. *Bazzetta v. McGinnis*, 286 F.3d 311, 324 (6th Cir. 2002). The district court subsequently issued an order of compliance on May 16, 2002, directing MDOC to comply with the terms of the court's judgment and enjoining the Department from enforcing the regulations "or any rule, policy, or procedure which bans, restricts, prevents or limits visitation based on prior or future misconducts for controlled substance violations." JA 75. In response to the district court's order, MDOC lifted the regulations on visitation privileges on all inmates subject to the permanent ban. JA 189.

MDOC filed and the Supreme Court granted a petition for certiorari. The Court limited its review, however, to "whether the regulations violate the substantive due process mandate of the Fourteenth Amendment, or the First or Eighth Amendments . . . ." *Overton*, 539 U.S. at 128. On the merits, the Court reversed, ruling that the regulations did not facially infringe the prisoners' First Amendment rights of intimate association or violate their Fourteenth Amendment substantive due process rights. *Id.* at 131-36. In so holding, the Court stated that it was not implying that "any right to intimate association is altogether terminated by incarceration" but it noted that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most

appropriate means to accomplish them." *Id.* at 131-32; *see also id.* at 134 ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose."). The Court also held that the withdrawal of visitation privileges did not "fall below the standards mandated by the Eighth Amendment." *Id.* at 137.

The *Overton* Court did not grant certiorari on the issue of whether the regulations violated the prisoners' procedural due process rights under the Fourteenth Amendment. In the context of its Eighth Amendment discussion, however, the Court noted that the "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline . . . . is not a dramatic departure from accepted standards for conditions of confinement. *Cf. Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." *Id.* The Court admonished that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.* at 137. It concluded, however, that "[a]n individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards . . .would not support [a] ruling . . . that the entire regulation is invalid." *Id.*

On August 26, 2003, MDOC moved for peremptory reversal of the district court's order of compliance and dismissal of the case. A panel of this court denied the motion so that the district court could consider the validity of the order in the first instance. *Bazzetta v. McGinnis*, 2003 WL 22434575, at \*1 (6th Cir. Oct. 24, 2003). A separate panel of this court remanded the case to the district court "for further consideration in light of the Supreme Court opinion." *Bazzetta v. McGinnis*, 2003 WL 22071463, at \*1 (6th Cir. Aug. 28, 2003). This panel specifically noted that the Supreme Court preserved "any argument that an individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards would pass muster under the First and Eighth Amendments . . . ." *Id.* (internal quotations omitted).

Meanwhile, MDOC reinstated the regulation permitting permanent visitation restrictions for two major misconduct substance abuse violations, with a few minor revisions. JA 161-62. MDOC voluntarily chose not to reinstate the restrictions on individual prisoners that were removed due to the May 16, 2002 order of compliance. *Id.*

On October 15, 2003, MDOC moved for summary judgment in the district court on the plaintiffs' procedural due process claims. JA 53-77. The plaintiffs countered with a motion to enforce compliance. JA 78-91. On December 23, 2003, the district court denied MDOC's motion for summary judgment, granted the plaintiffs' motion to enforce compliance and confirmed MDOC's obligation to present a proposal to cure the procedural due process violations arising from the imposition of the substance abuse regulation. JA 185-198. The district court acknowledged that MDOC had revised the regulation but found that it failed to correct the significant procedural problems associated with the implementation of the permanent ban on visitation. *Id.* Further, the district court rejected MDOC's mootness claim, holding that "'[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"[2] *Id.* at 189 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 189 (2000) (internal quotations omitted)).

Despite the district court's December 23, 2003 order, MDOC continued to issue permanent bans on visitation to inmates committing two major misconduct substance abuse violations. On

---

[2]The court also held that the case was ripe for review because there is no factual development needed to discover how the regulation will be implemented, no indication that the MDOC will change its position regarding the enforcement of the regulation, and the hardship to the prisoners to wait until their visitation rights are revoked is great. JA 190-91.

February 11, 2004, upon further motions, the district court issued a supplemental order confirming its December 23, 2003 ruling and denying MDOC's motion for an evidentiary hearing. JA 299-301. The court, however, certified the question of whether its order was fully consistent with the Supreme Court's decision in *Overton* for interlocutory appeal, in accordance with 28 U.S.C. § 1292(b). *Id.* at 301.

On February 20, 2004, MDOC petitioned for permission to appeal, representing that the district court had certified the question for review as "whether prisoners have a liberty interest in visitation." A panel of this court denied the petition as unnecessary, holding that MDOC, in reality, was seeking to appeal the district court's "order refusing to dissolve the injunctive relief previously ordered by the court [namely, the May 16, 2002 order of compliance] pursuant to its finding that the plaintiffs' procedural due process rights were violated." JA 328-29. Thus, the panel treated the petition as a notice of appeal pursuant to 28 U.S.C. § 1291(a)(1). *Id.* We now entertain that appeal.

## II. ANALYSIS

### A.     Standard of Review for Procedural Due Process Claims

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law. "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 125 S.Ct. 2384, 2393 (2005). Accordingly, a procedural due process analysis addresses two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In evaluating a claimed liberty interest by prison inmates, courts are mindful that imprisonment necessarily "carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). The "curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." *Id.* at 524 (internal citations omitted). Accordingly, not every "action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause . . . ." *Sandin*, 515 U.S. at 484.

Prisoners, however, retain a "residuum of constitutionally protected liberty," *Thompson*, 490 U.S. at 466 (Marshall, J., dissenting); *see Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("Our cases hold that a convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison."), that emanates from two discrete sources: (1) state law can establish a protectible liberty interest, or (2) the Constitution can create a liberty interest when a condition or restraint is so egregious as to implicate the Due Process Clause itself. *See Austin*, 125 S.Ct. at 2393.

Here, MDOC argues that the Supreme Court's decision in *Overton* implicitly held that the substance abuse regulation neither creates a protectible liberty interest nor implicates the guarantees of the Due Process Clause itself. MDOC claims that because the *Overton* Court foreclosed finding a liberty interest on the face of the regulation, when it determined that it did not constitute a "dramatic departure from acceptable standards for conditions of confinement," *Overton*, 539 U.S. at 137, the district court lacks authority to continue to enjoin its implementation of the substance abuse regulation, absent additional procedural safeguards. Accordingly, MDOC argues, the district court erred in refusing to dissolve its May 16, 2002 order of compliance.

The plaintiffs counter that the Supreme Court did not grant certiorari on the procedural due process issue and, thus, could not have overruled the holding of the district court that the substance abuse regulation established a liberty interest in visitation. In fact, the plaintiffs argue, the *Overton* Court expressly preserved their right to assert an "as applied" challenge to the regulation, such as

the one sustained by the district court in this case. Moreover, they contend that even if the Supreme Court's decision foreclosed finding a state-created liberty interest arising from the substance abuse regulation, the prisoners' liberty interest in visitation is implicit in the Due Process Clause.

We review a district court's denial of a request to dissolve an injunction for abuse of discretion. *See Pinette v. Capitol Square Review & Advisory Bd.*, 30 F.3d 675, 678 (6th Cir. 1994), *aff'd*, 515 U.S. 753 (1995). However, a district court's improper application of governing law constitutes an abuse of discretion. *See United States v. Colahan*, 635 F.2d 564, 566 (6th Cir. 1980); *see also Mascio v. Pub. Employees Ret. Sys. of Ohio*, 160 F.3d 310, 311 (6th Cir. 1998) (noting that a district court's decisions on injunctive relief are seldom disturbed unless it relied on clearly erroneous findings of fact, improperly applied governing law, or used an erroneous legal standard).

## B.    *Overton***'s Implicit Holding**

Plaintiffs first argue that the district court did not improperly apply governing law, *i.e.* *Overton*, by refusing to dissolve its May 16, 2002 injunctive order because the *Overton* Court did not grant certiorari on the procedural due process issue. Further, they claim that nothing in the Court's decision indirectly undermined the district court's finding that the substance abuse regulation violated the prisoners' procedural due process rights. We agree that the Court did not grant certiorari or otherwise expressly address the procedural due process issue. Nonetheless, we find that the Court implicitly ruled on this issue, in a manner inconsistent with the holding of the district court.

In the context of analyzing the "unusual" component of the Eighth Amendment's prohibition against cruel and unusual punishment, the *Overton* Court held that the substance abuse regulation was a "regular means of effecting prison discipline" which did not constitute "a dramatic departure from accepted standards for conditions of confinement." This statement is antithetical to the district court's finding a liberty interest in prison visitation because the regulation imposes on prisoners an "atypical" hardship in comparison to the ordinary incidents of prison life. *See supra* page 5.

Furthermore, the *Overton* Court cited *Sandin* in support of its statement that the regulation was not a "dramatic departure." In *Sandin*, the only issue was the prisoners' right to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. The *Sandin* Court observed that it had previously employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." 515 U.S. at 481. The Court abandoned this methodology, significantly limiting the authority of courts to find liberty interests stemming from positive state law in the prison context. Instead, it stated that the relevant inquiry must focus on the nature of the deprivation imposed on a prisoner, holding that if the nature of the deprivation does not impose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," prisoners will not have a liberty interest in avoiding the deprivation. "Applying this refined inquiry, *Sandin* found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not present a dramatic departure from the basic contours of the conditions of [the inmate's] sentence." *Austin*, 125 S.Ct. at 2394 (internal quotations omitted).

We extrapolate from *Overton* and *Sandin* that the substance abuse regulation is neither a "dramatic departure," nor an "atypical and significant hardship" in relation to the ordinary incidents of prison life. Thus, although the issue was not directly before the *Overton* Court, Court precedent and dictum has signaled against our finding a liberty interest on the face of the substance abuse regulation.

## C.        "As Applied" Procedural Due Process Challenge

The plaintiffs claim, however, that the district court did not rule that the regulation on its face violated the prisoners' procedural due process rights.  Instead, they assert, the district court found that the regulation, "as applied" to Michigan prisoners, triggered a state-created liberty interest. Citing the *Overton* Court's language that an individual prisoner could bring a "claim based on indefinite withdrawal of visitation or denial of procedural safeguards," and that "if faced with evidence that MDOC's regulation is treated as a de facto permanent ban on all visitation for certain inmates, we might reach a different conclusion in a challenge to a particular application of the regulation," the plaintiffs maintain that *Overton* expressly preserved their right to bring "as applied" claims.

In arguing that their challenge, as sustained by the district court, does not attack the substance of the regulation, but merely its implementation, the plaintiffs misconstrue both the nature of the district court's ruling and the difference between a facial and as applied procedural due process challenge.  The district court held that the substance abuse regulation, on its face, created a liberty interest because it imposed an "atypical and significant hardship" on all prisoners subject to the restriction.  *See Bazzetta*, 148 F. Supp. 2d at 858.  While the court cited examples of the treatment of particular inmates in its findings of fact to illustrate what it perceived as the general procedural deficiencies in the implementation of the regulation, *id.* at 836-43, it did not make factual findings as to the application of the regulation to any particular prisoner sufficient to support an as applied procedural due process claim.

As detailed above, the *Overton* Court subsequently foreclosed a facial procedural due process challenge under the standard set forth in *Sandin*.  The Court's decision in *Overton* does not preclude individual prisoners from challenging a *particular* application of the substance abuse regulation on First Amendment, Eighth Amendment or Fourteenth Amendment grounds but such "[a]n individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards, . . . [does] not support the ruling . . . that the entire regulation is invalid."  *Overton*, 539 U.S. at 137; *see also Jones v. Baker*, 155 F.3d at 816 (Gilman, J., concurring) (noting that *Sandin*'s principal directive is that "courts should look to see if the *particular* inmate has been deprived of a state-created interest of 'real substance' ") (citing *Sandin*, 515 U.S. at 478); *McClary v. Kelly*, 4 F. Supp.2d 195, 199 (W.D.N.Y. 1998) ("At its core, *Sandin* instructs courts to look at the nature and extent of the particular deprivation in deciding whether a protected liberty interest is implicated.").

## D.        Implicit Guarantees of Due Process Clause

Finally, the plaintiffs argue that regardless of whether the substance abuse regulation creates a liberty interest, such an interest emanates from the Due Process Clause itself because the permanent ban on visitation impinges on the prisoners' constitutional right to intimate association.

In addition to state-created liberty interests, the Constitution itself can create protectible liberty interests, but only if corrections officials impose restraints upon the prisoner which "exceed [the prisoner's] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin*, 515 U.S. at 2300.  In *Vitek v. Jones*, 445 U.S. 480 (1980), for example, the Supreme Court held that a prisoner has a liberty interest in not being involuntarily committed to a mental hospital that is implicit in the Due Process Clause, thus triggering constitutional procedural protections.  *Id*. at 489-90; *see also Washington v. Harper*, 494 U.S. 210 (1990) (concluding that a protectible liberty interest was implicated where a prisoner was involuntarily administered psychotropic drugs).

The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner," though.  *Sandin*, 515 U.S. at 478.  In fact, a

prison inmate does not have a liberty interest in transfer from one prison to another "for whatever reason or for no reason at all," within the State or to another State, regardless of differing conditions in the prisons. *Meachum v. Fano*, 427 U.S. 215, 228 (1976). Even a transfer to a maximum security facility with more burdensome conditions is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id.* at 225. This is true even though such a transfer operates as a "real hardship" on the inmate who is "effectively separated by the transfer from his only contact with the world outside the prison." *Montanye v. Haymes*, 427 U.S. 236, 242, n.4 (1976) (internal quotations omitted). Analysis of "the nature of the interest involved . . . compels the conclusion" that such a transfer, even with its changed conditions of confinement, "does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself." *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983).

This court has not addressed the issue of whether an incarcerated felon has a constitutionally protected liberty interest in prison visitation pursuant to the Due Process Clause.[3] There is no question that inmates retain many of the protections of the First Amendment, such as rights to free expression, *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); to petition the government for the redress of grievances, *Johnson v. Avery*, 393 U.S. 483 (1969), and to free exercise of religion, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). But even "[i]n the First Amendment context . . . some rights are inconsistent with the status of a prisoner," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), and a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

We know of no circuit court that has found an implicit due process right to prison visitation. In fact, the *Sandin* decision perpetuated the Court's general resistance to directly reading the Due Process Clause without support from a positive source of law, absent evidence of a "grievous loss." Although the substance abuse regulation at issue here is "severe," *see Overton*, 539 U.S. 134, we decline to hold that, on its face, it rises to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause.

## III. CONCLUSION

For the foregoing reasons, we hold that the district court abused its discretion in refusing to dissolve its May 16, 2002 order of compliance in light of the decision of the Supreme Court in *Overton*. We REVERSE the district court's December 23, 2003 opinion and order denying MDOC's motion for summary judgment and granting the plaintiffs' motion to enforce compliance and REMAND for further proceedings consistent with this opinion. Our reversal is without prejudice to any claim by an individual prisoner that the regulation, as applied to that prisoner, imposes an "atypical and significant hardship," thus implicating a protected liberty interest.

---

[3]In *Thompson*, the Supreme Court held that whatever rights may be retained by prisoners they do not have an implicit due process right to "unfettered visitation." 490 U.S. at 460; *see also Spear v. Sowders*, 71 F.3d 626, 629-30 (6th Cir. 1995) ("It is clear that a prisoner does not have a due process right to unfettered visitation . . . . A fortiori, a citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional dimension.") (citations omitted).