*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HENRY DAVID GRINTER,

*Plaintiff-Appellant,*

*v.*

No. 05-6755

CHAD KNIGHT, individually and in his official
capacity as Sergeant, Kentucky State Penitentiary, et
al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 04-00224—Thomas B. Russell, District Judge.

Submitted: February 7, 2008

Decided and Filed: June 19, 2008

Before: NORRIS, BATCHELDER, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Henry David Grinter, Eddyville, Kentucky, pro se.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. A Kentucky prisoner proceeding *pro se* appeals
the district court's order dismissing his civil rights action brought under 42 U.S.C. §§ 1981 and 1983
for violations of due process, equal protection, the Eighth Amendment, and the Fourteenth
Amendment during a mandatory screening procedure before the complaint was served on the
defendants. For the reasons set forth below, we affirm in part and reverse in part.

I.

Henry David Grinter filed a *pro se* complaint in which he sought relief pursuant to 42 U.S.C.
§§ 1981 and 1983. He names the following persons as defendants in their individual and official
capacities: (1) Sergeant Chad Knight of the Kentucky State Penitentiary, (2) Lieutenant and
Adjustment Committee Chairman William Henderson of the Kentucky State Penitentiary,
(3) Lieutenant and Adjustment Committee Member Jay R. Jones of the Kentucky State Penitentiary,
(4) Case Worker and Adjustment Committee Member Steve Hern of the Kentucky State

Penitentiary, (5) Warden Glenn Haeberlin of the Kentucky State Penitentiary, (6) Commissioner John D. Rees of the Kentucky State Penitentiary, (7) Lieutenant Joel Dunlap, head of Internal Affairs at the Kentucky State Penitentiary, (8) Lieutenant Will Thomas, Internal Affairs employee at the Kentucky State Penitentiary, and (9) Lieutenant Tim White of the Kentucky State Penitentiary. Grinter alleges his claims under 42 U.S.C. §§ 1981 and 1983 resulted from violations of his due process, equal protection, Eighth Amendment, and Fourteenth Amendment rights.

In his complaint, Grinter alleges that on January 3, 2003, Knight came to his cell to investigate an incident report that had been filed.[1] He alleges that Knight presented the report to him through a food opening in the door of Grinter's cell in the segregation unit and that Knight refused to add witnesses to an incident report in response to his request. After that, Knight closed the slot and slipped a copy of the report under the door.

Grinter avers that a short time later, White and another guard dressed in full riot gear approached his cell without a nurse present. White ordered Grinter to remove his clothes, pinned him to the wall while Grinter's linens and personal property were removed, and placed him under four-point restraints.[2] Grinter remained in the restraints, shackled to his bed, for four hours and sustained cuts and bleeding.

Grinter alleges that the following day, January 4, 2003, he was issued a disciplinary report claiming he assaulted defendant Knight. The incident report detailing the January 3 incident, which was attached to the complaint, stated that Grinter wadded up and threw the incident report. The report also stated that Grinter struck Knight's left arm and that Knight had a "small red spot" on his wrist. According to the incident report, at a hearing several weeks later the adjustment committee found Grinter guilty. The report states, "Based on facts as stated by Sgt. Knight and [the] medical report from Nurse Roystor . . . Grinter did strike Sgt. Knight[,] causing a red spot on his left wrist." The adjustment committee assessed a non-restorable penalty of sixty days forfeiture of good time credits.

Grinter alleges that he was never provided a copy of any medical records, the testimony Nurse Roystor gave cannot be true because she did not witness the incident, and J. Belt's written statement regarding the incident is troubling. Plaintiff appealed to the warden and the state department of corrections but was unsuccessful.

The district court dismissed the claims against Rees, Haeberlin, Hern, Jones, Henderson, Thomas, and Dunlap and the due process claims against Knight and White for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b). It dismissed the claims against the defendants, state employees, in their official capacities as claims against Kentucky – which was immune from suit. It dismissed the substantive due process claims based upon the use of the four-point restraints, the challenge to the procedures used by the adjustment board, and the denial of good-time credits, finding no liberty interest present. Likewise, it dismissed the claims for failure to intervene in or overturn the finding of guilt, explaining that the defendants could not be named on the basis of their supervisory roles and that there was no liberty interest. The district court dismissed the § 1981 claim against Knight, holding that Knight, as a public official, cannot be sued under § 1981.

The district court dismissed Grinter's § 1983 claims for violation of his equal protection rights against defendant Knight and the Eighth Amendment excessive force claim against defendant

---

[1]The incident report is not specifically identified in the complaint.

[2]Placing an inmate under four-point restraints involves shackling the inmate's hands and feet to the four corners of his bed.

White for failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e. At the direction of this court, the district court granted Grinter permission to file a late notice of appeal. This appeal followed.

## II.

We review a district court's decision to dismiss under 28 U.S.C. §§ 1915(e), 1915A , and 42 U.S.C. § 1997e *de novo*. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, __ U.S. __, 127 S. Ct. 910, 918-19 (2007)). The Prison Litigation Reform Act ("PLRA") requires district courts to screen and dismiss complaints that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

## III.

Section 1983 provides a private right of action for those persons subject to a deprivation of the "rights, privileges or immunities" guaranteed under the Constitution when that deprivation is effected by a person operating "under color of any statute, ordinance, regulation, custom, or usage" of a governmental entity. 42 U.S.C. § 1983. "[T]he violation of a federally protected right" is necessary for there to be liability against a government official under § 1983. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005). In addition, the deprivation must be committed by a person acting under color of law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

### A.  Due Process

We first turn to Grinter's due process claims. The district court dismissed Grinter's substantive due process claims for failure to state a claim. On appeal, Grinter appears to assert that the district court erred. Grinter argues that "the defendants did separately and jointly violate[ ] the substantive due process rights of the plaintiff."

#### i.    Official Capacity

Grinter names the defendants to the § 1983 claim in both their individual and official capacities. The district court dismissed the claims against the defendants in their official capacities as barred by the Eleventh Amendment.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court. *Id.* at 66. *See also Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986). All of the defendants are state employees and Kentucky has not waived its sovereign immunity. To the extent they are sued in their official capacities, the § 1983 claim fails.

#### ii.    Individual Capacity

Grinter alleges his substantive due process rights were violated when he was placed under four-point restraints for four hours, when prison adjustment procedures were not followed at his disciplinary hearing, and when the adjustment committee did not comply with the Kentucky statute authorizing good-time credits. The district court dismissed each of these claims for failure to state a claim.

The Due Process Clause of the Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted). "These limitations are meant to provide heightened protection against government interference with certain fundamental rights and liberty interests." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (internal quotation marks and citations omitted). "However, identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short." *Id.* (internal citations and quotation marks omitted). A fundamental right must be "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks and citation omitted).

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotations and citation omitted). We "reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest may arise from the Due Process Clause or a state regulation. *Sandin*, 515 U.S. at 487.

### iii.     Four-Point Restraints

Grinter alleges a substantive due process violation against White because he was in four-point restraints for four hours and White did not wait for a nurse to arrive before placing Grinter in the restraints.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin*, 515 U.S. at 480 (quotation marks and citation omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

In *Sandin*, the Supreme Court held that a prisoner's thirty-day confinement in disciplinary segregation was "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487, and did not "present a dramatic departure from the basic conditions of [the inmate's] sentence," *id.* at 485. In contrast, in *Wilkinson*, the Supreme Court held that prisoners "have a liberty interest in avoiding assignment to [super-maximum security prison]." *Wilkinson*, 545 U.S. at 224. We have held that a prisoner's designation as a member of a security threat group did not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). We also held that we would not "find [ ] a liberty interest on the face of" a substance abuse regulation that banned most visitation for prisoners found guilty of two or more substance abuse violations. *Bazzetta v. McGinnis*, 430 F.3d 795, 802-03 (6th Cir. 2005).[3]

The use of the four-point restraints and conditions in which they were administered – the four-hour duration of the period of restraint and the fastening of the restraints without a nurse present – were expected adverse consequences of confinement. Grinter had been accused of hitting a prison guard, Knight, at the time he was placed in the restraints. Furthermore, prison officials

---

[3]While some of these cases discuss procedural, rather than substantive, due process, they are relevant to the question of when liberty interests arise for incarcerated prisoners.

entered his cell to conduct an investigation. Given the accusation and the presence of the officials in Grinter's cell, as explained above, there was no liberty interest in either freedom from four-point restraints for four hours or in applying the restraints only in the presence of a nurse because the restraints were not an "atypical and significant hardship" in prison life. *Sandin*, 515 U.S. at 484.

The use of the restraints and the absence of a nurse pose a lesser hardship than the thirty-day assignment to solitary confinement in *Sandin* that the Court held did not infringe a liberty interest and are significantly less burdensome than the assignment to super-maximum security prison which was found not to infringe any liberty interest in *Wilkinson*. This situation is more analogous to banning visitors or designating prisoners as a threat, as in *Bazzetta* and *Harbin-Bey*, where we found there was no liberty interest. Thus, the Due Process Clause does not give rise to a liberty interest in freedom from four-point restraints or in having a nurse arrive before placing an inmate in the restraints.

A state may create a liberty interest through a law or regulation establishing freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Grinter has pointed to no Kentucky law or regulation that creates an interest in freedom from four-point restraints or in having a nurse present when such restraints are applied to a prisoner. Therefore, White did not violate the Due Process Clause by placing Grinter in four-point restraints for four hours or in attaching the restraints without a nurse present.

### iv.    Adjustment Procedures in the Disciplinary Hearing

Grinter alleges a substantive due process violation against Henderson, Jones, and Hern because they violated policy by failing to provide Grinter with a copy of a medical report, failed to question Dunlap and Thomas, failed to make J. Belt available for questioning, and found guilt without sufficient evidence.[4] The district court dismissed each of these claims.

The allegations of failing to provide a copy of a medical report, failing to question Dunlap and Thomas, and failing to make J. Belt available for questioning appear to allege that defendants failed to follow established procedures. Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Thus, the substantive due process violation claim fails because the failure to follow procedure and provide Grinter with a medical report, question Dunlap and Thomas, and make J. Belt available for questioning does not infringe a liberty interest.

Thus, even if Grinter had asserted a procedural due process claim against these defendants, it also would have failed. *See Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) (holding that due process does not require that parole authorities follow established procedure). These alleged procedural violations by Henderson, Jones, and Hern did not violate the Due Process Clause.

---

[4]Grinter offered no allegations or argument in support of his claim that there was insufficient evidence to support a finding of guilt. "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (citation omitted). Grinter has provided no argument or allegations in support of this argument either in the district court or before this court and has waived it. *See also Rogers v. Howes*, 64 F. App'x 450, 455 (6th Cir. 2003) ("The mere assertion by the petitioner that there was insufficient evidence, without more, cannot support a finding of deprivation of due process.") (internal quotation marks and citation omitted).

v. Compliance With the Statute Authorizing Good-Time Credits

Grinter alleges a substantive due process violation because Henderson, Jones, and Hern violated the Kentucky good-time credit statute, Kentucky Revised Statute § 197.045, denying him the ability to accumulate sixty days of good-time credits. Grinter had already forfeited 2400 days of good-time credit and avers he had no more good-time credit to forfeit at the time he was denied the possibility of accumulating sixty days of good-time credits. The statute provides in part, "The department may forfeit any good time previously earned by the prisoner or deny the prisoner the right to earn good time in any amount if during the term of imprisonment, a prisoner commits any offense or violates the rules of the institution." Ky. Rev. Stat. § 197.045(1).

As "the Due Process Clause itself does not create a liberty interest in credit for good behavior," *Sandin*, 515 U.S. at 477, the question is whether the Kentucky statute creates such an interest. A Kentucky inmate " possesses no inherent constitutional right . . . to accumulate good time credits." *Hopewell v. Berry*, No. 89-5332, 889 F.2d 1087 (table), 1989 WL 137177, at *1 (6th Cir. Nov. 15, 1989) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Furthermore, "[p]rison officials clearly have discretion under state law to deny a prisoner future good time." *Id.* (citing Ky. Rev. Stat. § 197.045(1)). As there is no right to accumulate good-time credits, Henderson, Jones, and Hern did not commit a constitutional violation. Grinter's substantive due process rights were not violated because of his inability to accumulate good-time credits.

vi. Supervisory or Administrative Liability

The district court dismissed the claims against Haeberlin, Rees, Dunlap, and Thomas for multiple reasons including that Grinter cannot maintain a claim against these defendants in their supervisory capacities.

In his complaint, Grinter alleges that Warden Haeberlin and Commissioner Rees violated his due process rights by acting in a supervisory capacity and allowing their employees to violate Grinter's rights and for affirming the finding of guilt. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Grinter has not alleged that Haeberlin and Rees committed any actual acts, nor has he averred that they acquiesced in the conduct of their employees.

Grinter also alleges that Internal Affairs Officers Dunlap and Thomas failed to intervene when Grinter informed them in writing that Knight's accusations were false. If Grinter is alleging that they were acting in a supervisory capacity, the claim fails. *See Bellamy*, 729 F.2d at 421. Furthermore, if the allegation is brought against Dunlap and Thomas for actions they committed for failing to intervene, the claim also fails. The "denial of administrative grievances or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To the extent Grinter is alleging that he was denied administrative appeals, he fails to state a claim because "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim*, 461 U.S. at 250 n.12. We affirm the dismissal of the claims against Haeberlin, Rees, Dunlap, and Thomas.

In conclusion, for the reasons explained above, we affirm the dismissal of Grinter's due process claims against all defendants named in these claims.

B.     Equal Protection Under § 1981

Grinter asserts an equal protection claim against Knight in his official and individual capacities under § 1981 for race discrimination.  The district court dismissed this equal protection claim for failure to state a claim.[5]  Grinter alleges in his complaint that "Defendant Knight subjected [him] to cruel [and] unusual punishment for no reason other than he does not like 'black inmates.'"

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  The statute elaborates, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).

Section 1981 is unavailable to Grinter as a vehicle to pursue a damages claim against Knight in his official capacity.  "[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" when the claim is asserted against a state actor in his official capacity. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). *Jett* continues to control following amendments to § 1981 to add subsection (c) in 1991. Nothing about the amendments suggests that Congress's intent was to overrule *Jett*.[6]  A panel of this court assumed without discussion that the amendments did not overrule *Jett* as applied to state actors sued in their official capacities. *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 229 F.3d 1153 (table), 2000 WL 1140750, at *2 (6th Cir. Aug. 8, 2000) (concluding that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of actions seeking equitable relief against state actors alleging violation of their rights under § 1981").  Other circuits concur. *See, e.g.*, *Pittman v. Oregon Employment Dep't*, 509 F.3d 1065, 1074 (9th Cir. 2007) ("[W]e hold that § 1981 does not contain a cause of action against states."); *Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir. 2001); *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir.1995); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994).

Because *Jett* remains in force, consequently, § 1983 provides an exclusive remedy for violations against state actors sued in their official capacities.  An official capacity lawsuit against Knight, a state actor, for constitutional violations, such as race discrimination, cannot be brought under § 1981.

---

[5]In the complaint, in addition to the specific allegation against defendant Knight, Grinter alleges "defendants" violated his "equal rights" in violation of § 1981.  "This court has adopted the requirement that a plaintiff allege with particularity all material facts to be relied upon when asserting that a governmental official has violated a constitutional right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002).  Such "conclusory, unsupported statements" are "insufficient to state a claim." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

[6]The new language states in relevant part, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).  This language creates a right, but not a remedy, and therefore shows no Congressional intent to overrule *Jett*. *See Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) ("[T]he section creates a right that private or state actors may violate but does not itself create a remedy for that violation.").

Furthermore, Grinter fails to state a claim against Knight in his individual capacity.[7] Grinter alleges Knight subjected him to cruel and unusual punishment because of his race. Grinter, who is *pro se*, is held to a less stringent pleading standard than a party with an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Despite this, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). *See also Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.") As Grinter pleads a legal conclusion without surrounding facts to support the conclusion stated in this claim, he fails to state a claim. We affirm the dismissal of the § 1981 claim.

### C.     Failure to Exhaust Administrative Remedies

The district court dismissed Grinter's Eighth Amendment excessive force and equal protection race discrimination claims for failure to exhaust administrative remedies. On appeal, Grinter argues that he had exhausted his administrative remedies as to all claims at the time he filed the complaint.

Prisoners must exhaust their administrative remedies before challenging prison conditions. 42 U.S.C. § 1997e. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. at 918-19. Failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 921.[8],[9]

Grinter alleges that defendant White used excessive force in applying the four-point restraints in violation of the Eighth Amendment. He also alleges that defendant Knight discriminated against him because of his race in violation of his equal protection rights. The district court summarily dismissed both of these claims because of Grinter's failure to plead or demonstrate that he had exhausted his administrative remedies. While the district court followed our precedent at the time it ruled in dismissing these claims at the screening stage on exhaustion grounds, *Jones* overruled these cases and changed the law. Under *Jones*, because exhaustion is an affirmative defense, a claim may not be dismissed at the screening stage for failure to plead or attach exhibits with proof of exhaustion. We reverse the dismissal of these claims for failure to exhaust administrative remedies and remand the case for further proceedings in light of *Jones*. *See, e.g.*, *Dotson v. Corr. Med. Servs.*, 2007 WL 3230909, at *2 (6th Cir. Nov. 1, 2007) (remanding case to the district court with instructions to evaluate claims prematurely dismissed under *Jones* and listing cases remanding pursuant to *Jones*).

---

[7]We may affirm a district court for any reason, including a reason not considered by the district court. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005).

[8]*Jones v. Bock* overruled *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (holding that the prisoner has the burden of demonstrating he has exhausted his administrative remedies in his complaint), *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) (holding that the prisoner must exhaust his administrative remedies as to each defendant later sued), and *Jones Bey v. Johnson*, 407 F.3d 801, 807 (6th Cir. 2005) (holding that the PLRA requires "total exhaustion" where an entire action should be dismissed if one claim is not properly exhausted). __ U.S. __, 127 S. Ct. at 918-26.

[9]Furthermore, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Id.* at 923. Finally, if a complaint contains claims that are exhausted and claims that are not exhausted, the district court should proceed with the exhausted claims while dismissing the claims that are not exhausted and should not dismiss the complaint in its entirety. *Id.* at 923-26.

IV.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the district court.